In re Norman B. **HART** and Margo Jean Hart, Debtors.

**Bankruptcy No. 94–06832–8G3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 17, 1995.

Allan C. Watkins, Tampa, FL, for Hart.

Terry Smith, trustee.

Robert E. Vaughn, Jr., Tampa, FL, for movants.

## ORDER ON BARNETT'S MOTION FOR RELIEF FROM STAY OR FOR ADEQUATE PROTECTION

PAUL M. GLENN, Bankruptcy Judge.

**THIS IS** a Chapter 13 case filed by Norman B. and Margo Jean Hart (the "Debtors"). Barnett Banks, Inc., Dealer Financial Services, West Central Region, as attorney-in-fact for Barnett Bank of Tampa assignee of Barnett Banks, Inc. ("Barnett"), has filed a Motion for Relief from the Automatic Stay asserting that the stay should be lifted to enable Barnett to foreclose a mortgage which it holds on the Debtors' principal residence. Alternatively, Barnett requests adequate protection of its interest in property of the Debtors.

On December 26, 1991, the Debtors executed a Note and a Mortgage and Security Agreement in favor of Barnett. The Note (the "Barnett note") was due in full on January 9, 1994. The Mortgage and Security Agreement securing the note (the "Barnett mortgage") was subordinate to a prior mortgage (the "first mortgage") securing a first mortgage note.

On January 9, 1994, the Barnett note matured according to its terms and the full amount of $69,595.74 became due. At this time, the first mortgage note was in default in the payment of installments, had been accelerated, and the first mortgagee had begun a foreclosure action in state court. On January 26, 1994, Barnett paid off the total amount due under the accelerated first mortgage note, paying the first mortgagee $45,450.73. Barnett asserts that it did not acquire the accelerated note and first mortgage by assignment, but that it paid off the first mortgage note under provisions in its subordinate mortgage.[1] Barnett asserts that the total of the amounts now due is $115,046.47, plus interest, late charges, attorney's fees and costs, that these amounts were fully due pre-petition, and that these amounts are secured by the Barnett mortgage.

The property securing both the Barnett mortgage and the first mortgage is the Debtors' principal residence. On their Schedules, the Debtors value this property at $318,000.00. The parties agree that Barnett's claim is a claim secured only by a security interest (or security interests) in real property that is the Debtors' principal residence.

Barnett asserts that it is entitled to relief from the automatic stay because as a matter of law the Debtors may not propose a Chapter 13 plan which cures a matured loan secured by a home mortgage.

The Debtors argue that they may pay the amount due under the matured note secured by Barnett's mortgage through their Chapter 13 plan, and that the first mortgage may be decelerated and reinstated (with Barnett as its holder) and any default amounts cured through a Chapter 13 plan.

The first issue is whether a debtor's Chapter 13 plan may deal with a secured claim which is secured only by a security interest in real property that is the debtor's principal residence (a "home mortgage") where the promissory note secured by the home mortgage has matured according to its terms prior to the filing of the bankruptcy petition.

---

1. The Barnett mortgage contains the following provisions:

   6. Mortgagee's Right to Make Certain Payments. In the event Mortgagor fails to pay ... liabilities, obligations, and encumbrances ... Mortgagee may at its option pay or discharge the ... liabilities, obligations, and encumbrances or any part thereof.... The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof until paid at the Default Rate, ... and together with such interest, shall be secured by the lien of this mortgage.

   .    .    .    .    .

   18. Future Advances. This mortgage is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Mortgagee, or otherwise, as are made within fifteen years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the face amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate, as hereafter defined.

More simply stated, may a Chapter 13 debtor deal with a matured home mortgage loan in a Chapter 13 plan.

The second issue involves the payoff of the first mortgage note. Where a subordinate mortgagee has paid a prior long term mortgage through the provisions of its subordinate mortgage which provide that such amounts may be paid, are immediately due, and are secured by the subordinate mortgage, must the debtor deal with the amounts as immediately due under the terms of the subordinate mortgage, or may the debtor decelerate and reinstate the former first mortgage with the subordinate mortgagee as its holder, and cure defaults through a Chapter 13 plan.

### The Matured Mortgage Note

Whether a debtor's Chapter 13 plan may provide for the payment of the debt secured only by the debtor's principal residence by full payment through the plan, when the last payment under the original obligation came due prior to the commencement of the bankruptcy (or will come due during the pendency of the bankruptcy) is a question numerous courts have considered and have reached a variety of conclusions.

Section 1322 sets out the requirements of a plan. The provisions of § 1322(a) are mandatory, and the provisions of § 1322(b) are permissive. Section 1322(b) provides, in part, as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

. . . . .

Section 1322(b)(5) allows for the curing of a default on any claim, secured or unsecured, on which the last payment is due after the date on which final payment under the plan is due (a "long term" loan). However, Barnett's claim for the matured debt is not a claim on which the last payment is due after the date on which the final payment under the plan is due, so the claim for the matured debt cannot be treated under this section.

Section 1322(b)(2) prohibits modification of the rights of a holder of a secured claim if the claim is secured only by a security interest in real property that is the debtor's principal residence. The parties agree that Barnett's claim is secured only by a security interest in real property that is the Debtors' principal residence. Accordingly, under § 1322(b)(2), Barnett's rights may not be modified.

Section 1322(b)(3) provides that a plan may provide for the curing or waiving of any default. The failure to make the balloon payment upon maturity of the Barnett note is a default.[2]

The sharply focused question is whether permitting a Chapter 13 debtor to pay a matured home mortgage loan through a Chapter 13 plan is an impermissible modification of the rights of a home mortgagee under § 1322(b)(2) or a permissible curing of a default under § 1322(b)(3). There is substantial respectable authority for both positions.

One line of authority reasons that a Chapter 13 plan which extends payment beyond the final payment date contained in the original agreement is a modification of the rights of the holder of the claim, and is prohibited

---

**2.** The Barnett mortgage also provides:

   10. Event of Default....

(a) Failure by Mortgagor to pay, as and when due and payable, any installments of principal or interest due under the Note....

by subsection (b)(2), notwithstanding the fact that the plan proposes full payment of the claim. The second line of authority holds that subsection (b)(3) provides for the curing of any default through a Chapter 13 plan, and that the default created by the failure to pay a home mortgage loan which has matured prior to the commencement of the Chapter 13 case may be cured through a Chapter 13 plan.

The first line of cases is lead by the case of *In re Seidel,* 752 F.2d 1382 (9th Cir.1985), in which the Ninth Circuit Court of Appeals considered whether a Chapter 13 plan may be confirmed that proposes to satisfy a home mortgage loan that had fully matured prepetition. The court concluded that this was an impermissible modification of the home mortgage. The Court discussed the plain meaning of the word "modification," the concept of "cure," and legislative intent.

In our view, the plain meaning of the word "modification" in subsection (b)(2) must bar Seidel's plan. By postponing payment of the debt beyond the time originally contemplated by the parties to the contract, his plan clearly amounts to a unilateral "modification" of the original debt contract as that word is ordinarily used. *Seidel,* 752 F.2d at 1384.

The decisions [reaching contrary results] rely on the fact that "the plain meaning of 'cure,' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the status quo ante." ... When a debt has been accelerated, "cure" therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured—as in Seidel's case—"cure" as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable. *Seidel,* 752 F.2d at 1386.

In addition to the general legislative purpose, however, we must also consider contrary legislative intent. In the specific context of subsection b(2), an amendment was added to protect home lenders, rather than home owners, by prohibiting home owners from modifying debts wholly secured by home mortgages. [Citations omitted]. This deliberate alteration of the statute's general protection of the debtor is a more precise barometer of congressional intent in this particular context. It indicates here that a debtor should not be able to use section 1322(b) to delay payment of a debt which has already come naturally due. *Seidel,* 752 F.2d at 1385.

The *Seidel* court concluded:

We are compelled by the legislative history and the plain meaning of subsection (b)(2) to uphold Congress' intention to protect home mortgage lenders. Although Chapter 13 empowers all other types of debtors to "cure" their outstanding debts and make payments out of future income, in the specific context of home mortgage debts, the final amendments to subsection (b)(2) unequivocally favor the creditor. *Seidel,* 752 F.2d at 1387.

The second line of cases holds that a home mortgage loan which has fully matured prior to the commencement of the bankruptcy case may be cured under a Chapter 13 plan. This line of cases has developed from the reasoning of the Second, Fifth, and Seventh Circuit Courts of Appeal in the cases of *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982), *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984), and *Matter of Clark,* 738 F.2d 869 (7th Cir.1984). *Taddeo* and *Clark* involved accelerated long-term home mortgage loans, and *Grubbs* involved an accelerated home mortgage loan which would naturally mature during the term of the Chapter 13 plan. The discussions in those cases are instructive. To those courts, a cure is not a modification of rights. Following their reasoning, courts have concluded:

[A] debtor's right to cure should be interpreted so as to permit the debtor to use any method otherwise available to him to make the creditor whole, while at the same time, protect his assets. Accordingly, this Court believes that if a debtor's plan provides for payments with interest, the present value of which equals the full amount of the judgment plus interest and costs, the mortgagee is receiving exactly that which he would receive if the mortgagor debtor were to tender full payment and

therefore is not modification of a creditor's rights, but is a cure of the debtor's default pursuant to § 1322(b)(3). [Citations omitted]. *In re Dixon,* 151 B.R. 388, 392 (Bankr.S.D.Miss.1993).

Section § 1322(b)(3) provides that a plan may provide for the curing of any default. The home mortgage loan matured and was not paid—it is in default. If the loan has matured, the entire unpaid amount is in default and must be cured. While this may present questions of feasibility, the proposal is permissible.

This Court agrees with the cases which hold that the payment of a matured home mortgage through a Chapter 13 plan does not constitute an impermissible modification of the rights of the mortgagee, but is a permissible cure of a default.

Curing a default means that "the event of default is remedied and the consequences are nullified." *Taddeo,* 685 F.2d at 29. "The common meaning of 'cure' is to remedy, restore, remove, or rectify, ... and as the term relates to defaults, 'cure' means to restore matters to the status quo ante." *Clark,* 738 F.2d at 872. "Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, 'cure' is the end, not the means, and what the term refers to is the restoration of the way things were before the default." *Clark,* 738 F.2d at 872. "A default is an event in the debtor-creditor relationship which triggers certain consequences.... Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code." *Taddeo,* 685 F.2d at 26–27.

In the Barnett mortgage, an event of default was the failure to pay the note when it became due. That default may be cured by paying the full amount due. The *Seidel* court states that a debt which has naturally matured cannot be cured, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable, and cure must result in the reinstatement of the original payment terms of the debt. While curing an accelerated debt involves reinstatement of the original terms (deceleration) and cure of the delinquent amount over time, curing a matured debt requires payment of the delinquent amount in full. The cure of a matured debt does not seek to reinstate and maintain payments—the debt has matured and there is nothing to reinstate and maintain. It simply seeks to cure the default. To cure a default is to remedy or rectify the default and restore matters to status quo ante. If there has been a default in payment of the matured obligation, to cure the default the debt must be completely paid, and the parties are returned to the status quo ante. Before the default, the creditor was entitled to full payment. After the cure, the creditor has been paid in full.

"We believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims." *Taddeo,* 685 F.2d at 27. Under these cases, a cure is not a modification because "... 'cure' is the end, not the means...." *Clark,* 738 F.2d at 872.

■ A plan may not modify the rights of the holder of a claim secured by a home mortgage.

The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankruptcy estate to state law," since such "[p]roperty interests are created and defined by state law." [Citations omitted]. Moreover, we have specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." [Citation omitted]. The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under [state] law. They include the right to repayment of the principal in monthly installments over a fixed

term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioner's residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. [Citations omitted]. These are the rights that were "bargained for by the mortgagor and the mortgagee," [Citation omitted] and are rights protected from modification by § 1322(d)(2). *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Among the rights which Barnett has under the matured mortgage are the right to immediate payment in full, the right to its lien on the property to secure the full amount the obligation, the right to maintain its lien interest in property free from encumbrances other than as agreed, the right to pay property taxes if the mortgagor does not, the right to insure the property if the mortgagor does not, the right to pay the mortgagor's obligations secured by the property if the mortgagor does not, the right to have such payments secured by the mortgage, the right to immediate repayment of such amount from the mortgagor, the right to accelerate the debt upon condemnation, the right to receive condemnation awards, the right to reimbursement for all costs and expenses incurred because of defaults by the mortgagor, the right for the lien of the mortgage to attach to certain after-acquired property, and the right to make future advances secured by the mortgage, among other rights. These are rights which cannot be modified.

In *Nobelman,* the Supreme Court points out that the mortgagee's rights, while not modified, are affected by bankruptcy:

This is not to say, of course, that the contractual rights of a home mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy. The lender's power to enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision. [Citation omitted]. In addition, § 1322(b)(5) permits the debtor to cure pre-petition defaults on a home mortgage by paying off arrearages over the life of the plan 'notwithstanding' the exception § 1322(b)(2). These statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition. *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2110.

Where a mortgagor has failed to comply with a payment obligation secured by a mortgage, the mortgagee's right to timely payment has been breached and the mortgagor is in default. Allowing the mortgagor to cure the default does not modify the mortgagee's right to be paid; rather, it cures the default. Cure is the end, not the means, and § 1322(b)(3) is clear: a plan may "provide for the curing . . . of any default."

If a plan sought to reinstate the former monthly payments and extend the maturity date (by providing for a subsequent balloon amount due which could not be paid out of future earnings or other future income, or by providing for a long-term amortization), this would be a modification of the lender's rights, and not permissible.

The four Circuit Court cases contain discussions of statutory construction and legislative intent, some of which are more extensive than others. All courts look first to the plain reading of the Code and the plain meaning of words, with differing conclusions. The Courts then look to legislative history. On the one hand, there is "the general legislative purpose of allowing a debtor to preserve his home." *Seidel,* 752 F.2d at 1382. On the other hand, there is the provision of subsection (b)(2) which was added to protect home lenders, rather than homeowners, by prohibiting the modification of rights of holders of home mortgages. *Id.*

First, the Bankruptcy Code itself should be examined. If cure is a modification of rights, then the default in the matured mortgage loan cannot be cured. This Court concludes, however, that Congress did not view cure as a modification of rights. Subsection (b)(2) allows the modification of rights of the holder of any claim (except a home mortgage loan). If the cure of a default were a modification of the rights of the holder of a claim, then there would be no need for subsection

(b)(3) which allows the curing of any default.[3] Accordingly, a reading of the Code requires the conclusion that cure be viewed differently than a modification of rights. Since a cure is not a modification of rights, then with respect to home mortgages where modification of rights is prohibited, a cure is not an impermissible modification of rights.

The *Grubbs* court reviewed extensively the genesis and intention of subsections (2), (3), and (5) of § 1322(b) as disclosed by their legislative history, through the House proposed legislation, the Bankruptcy Commission proposal which was the genesis of the House legislation, and the subsequent Senate and concurrent actions. The court pointed out that modifications of rights were viewed as changing the size and timing of installment payments, reducing the creditor's security interest to the value of the collateral as contrasted with the amount of a secured debt, as well as the alteration or modification of other provisions of the secured creditor's contract. The focus of *Grubbs'* review was to determine if an accelerated mortgage loan could be decelerated, the default cured, and payments maintained. After an extensive review of legislative history, the *Grubbs* court found an intended distinction between "modify" and "cure," and concluded:

> In context, and as explained by their legislative history, ... the final amendments to subsections (b)(2) and (b)(5) of § 1322, did not, with regard to home mortgages, affect the general provision of Chapter 13, *see* § 1322(a), that permitted a petitioner's plan to pay from future income over the term of the plan any matured prepetition obligations, whether secured or unsecured; nor did these amendments intend to affect the authorization for a Chapter 13 plan either (1) to cure any default with regard to debts that were provided for by the plan, § 1322(b)(2), or (2) to cure any default within a reasonable time and to maintain payments upon a nondischargeable long-term obligation, whether secured or unsecured, § 1322(b)(5).

Thus, the bankruptcy court was in error in finding that § 1322(b)(5)'s preface, "notwithstanding paragraph (2)", was a subset of the power to "modify" set forth in (b)(2). As observed in *In re Taddeo, supra,* 685 F.2d at 27, a "superficial reading of the statute [to that effect] must fail in the light of legislative history and legislative purpose." Rather, "[t]he 'notwithstanding' clause was added to emphasize that defaults in mortgages could be cured notwithstanding § 1322(b)(2)." *Id.*

.    .    .    .    .

The acceleration triggered by Grubbs' default in payment was thus curable under § 1322(b)(3), rather than (5). While the proposed plan might possibly not be able to "modify" the obligation to pay monthly installment amounts that became due on a home mortgage subsequent to the filing of the Chapter 13 petition, § 1322(b)(2), it could nevertheless provide for the payment from future income of previously non-accelerated matured amounts that had become due prior to the filing the Chapter 13 petition, §§ 1322(a), 1327, 1328(a). *Grubbs,* 730 F.2d at 246–247.

■   Although the size and timing of post-petition installments cannot be modified, the plan may cure defaults in pre-petition installments which have matured, and may cure defaults in all pre-petition amounts which have matured.

The Eleventh Circuit Court of Appeals has not addressed this question. However, the Court looks to other decisions of the Eleventh Circuit and District Courts in the Middle District of Florida for guidance.

In the case of *In re Hoggle,* 12 F.3d 1008 (11th Cir.1994), the Eleventh Circuit Court of Appeals held that a Chapter 13 plan could be modified to allow a debtor to cure post-confirmation defaults on a home mortgage. The Eleventh Circuit focused on the fact that § 1322(b)(5) clearly states that a plan may provide for the curing of any default in a long-term loan, and did not limit this to the

---

**3.** "... [I]t is clear that Congress intended 'cure' to mean something different than 'modify'; otherwise, in light of (b)(2), (b)(3) would be superfluous. It is well established that a court should avoid a construction of a statute that renders a portion of the statute superfluous." *Clark,* 738 F.2d at 871–872.

cure of a pre-petition default, despite the prohibition against modifying home mortgages. "Congress could have easily inserted the word prepetition to modify default but failed to do so. The omission is significant." *Hoggle*, 12 F.3d at 1010. By similar reasoning, if Congress had intended the subsection (b)(2) prohibition against modification of home mortgages to prohibit subsection (b)(3) cures, it could easily have inserted this prohibition in subsection (b)(3) as well as in subsection (b)(2).

Additionally, the Eleventh Circuit concluded that this result is consistent with legislative intent and indicated that it might not view a subsection (b)(3) cure as a subsection (b)(2) modification:

> Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. [Citation omitted]. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. [Citation omitted]. A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13.... Accordingly, permitting cure of post-confirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes.
>
> ... With respect to § 1322(b)(3), an analogous section which provides generally for curing defaults, the legislative history unambiguously provides that a plan may provide for the curing or waiving of any default. *Hoggle*, 12 F.3d at 1010.

The United States District Court for the Middle District of Florida has made the following statement in the case of *In re Boromei*, 92 B.R. 516, 517 (M.D.Fla.1988), indicating its tendency to follow the reasoning of *Clark* and *Taddeo*:

> Courts appear to be in agreement that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in (b)(2) because "curing defaults" under

(b)(3) or "curing defaults and maintaining payments" under (b)(5) are not modifications of claims. *See e.g. Matter of Clark*, 738 F.2d 869, 871–872 (7th Cir.1984); *In re Taddeo*, 685 F.2d 24, 27 (2nd Cir.1982)....

> While it is generally correct that even in Bankruptcy proceedings property interests are defined by state law, this is true only "unless some Federal interest requires a different result." *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). By enacting § 1322(b), Congress has expressed such a Federal interest in the rehabilitation of individual debtors by allowing them to cure defaults in the payments of the mortgages....

> This Court agrees with the Second Circuit's interpretation of § 1322(b) and finds it applicable here....

While these decisions do not address the issue considered here, they nevertheless indicate the propensity of the courts in this circuit and district to interpret the curing of a default as not being a modification of rights, and a deference to the federal interest in allowing homeowners to use the Chapter 13 mechanisms to save their homes.

■ Accordingly, this Court concludes that a Chapter 13 plan may propose to cure a default caused by the debtor's pre-petition failure to pay a home mortgage loan at its maturity.

### Payment of the First Mortgage Loan

■ The second issue involves Barnett's payment of the first mortgage loan. Where a subordinate mortgagee has paid off a prior long term mortgage loan through the provisions of its subordinate mortgage which provide that such amounts may be paid, are immediately due, and are secured by the subordinate mortgage, must the debtor deal with the amounts as immediately due under the terms of the subordinate mortgage, or may the debtor decelerate and reinstate the former first mortgage with the subordinate mortgagee as its holder, and cure defaults through a Chapter 13 plan.

■ It is settled in all districts in Florida that a Chapter 13 debtor may decelerate and

reinstate an accelerated long term home mortgage and cure defaults through a Chapter 13 plan, prior to a foreclosure sale. *See In re Boromei,* 92 B.R. 516 (M.D.Fla.1988); *In re Related Partners Properties, Inc.,* 163 B.R. 213 (S.D.Fla.1993); and *In re Westmore,* 75 B.R. 110 (Bankr.N.D.Fla.1987).

In this case, however, the first mortgage no longer exists. Barnett did not buy the long-term note and first mortgage or take them by assignment with the result that it is the holder of the long-term note and first mortgage as well as the subordinate mortgage. Barnett paid off the first mortgage loan through its contractual right to pay the mortgagor's liabilities, obligations and encumbrances, and the full amount of that payment became immediately due and payable under the specific terms of the Barnett mortgage. By taking this approach, any liens which were between the former first mortgage and Barnett's mortgage remain prior to Barnett's mortgage, but Barnett has the clear contractual right to do this.

The Debtor seeks to reinstate the former first mortgage with Barnett as its holder, decelerate the note, cure the defaults and maintain the payments under § 1322(b)(5).

The Debtor cannot do this—such treatment would modify Barnett's rights under its subordinate mortgage, which is impermissible under § 1322(b)(2). The right to pay obligations and encumbrances which could affect Barnett's collateral and the security of its position is a right which Barnett bargained for in the mortgage. This right is clearly provided by the mortgage, and is a right which cannot be modified.

Although § 1322(b)(5) allows a cure and reinstatement of a long term home mortgage not withstanding the prohibition against modification, there is no longer a long term mortgage which can be dealt with under § 1322(b)(5). The long term note has been paid, the first mortgage satisfied, and the amount is now due and payable in full under the subordinate mortgage. This amount has not been paid when due and payment is in default. The default may be cured through a Chapter 13 plan, but it must be cured in full. Any other treatment would be an impermissible modification of Barnett's rights.

■ The Debtor asks for this treatment on equitable principles. The Bankruptcy Court is a court with extensive equitable powers. *See* 11 U.S.C. § 105. Mortgages are foreclosed in equity in Florida. *See* Fla. Stat. § 702.01 (1987). Section 105 equitable powers are specifically to carry out the provisions of the Code, however, and the Code provides that the mortgagee's rights cannot be modified. Further, Barnett's actions should be presumed appropriate unless there has been some impropriety in Barnett's conduct, and the Debtor has made no such assertion. Barnett paid the first mortgage loan after the note was in default and accelerated, and the first mortgage was being foreclosed; it did not pay the loan to force the debtor to cure a larger default amount through a Chapter 13 plan.

■ Accordingly, the Court concludes that the total amount of the obligations, both the matured Barnett note and the amount paid to the first mortgagee pursuant to the terms of the Barnett mortgage, are now due and are secured by the Barnett mortgage. These amounts were due in full pre-petition, and payment is now in default. The defaults may be cured through the Debtors' Chapter 13 plan, but they must be cured in full. While this may present questions of feasibility, the proposal is permissible, and Barnett's Motion for Relief from the Stay should be denied.

■ As an alternative, Barnett has requested adequate protection of its interest in property of the Debtors. The Debtors have offered protection by making monthly payments of principal and interest, based on the total amount owed to Barnett, the contract pre-default rates of interest, and an amortization based on the former remaining term of the former first mortgage note. In view of the Debtors' substantial apparent equity in the property, the Court believes that this offer of protection is adequate to protect Barnett's interest at this time, pending consideration of the Chapter 13 plan. The Debtors should make such payments to Barnett monthly on the former monthly due date of the Barnett note, until confirmation of the

**859**

Chapter 13 plan or earlier order of this Court.

Therefore:

**IT IS ORDERED** that:

1. The request for relief from the automatic stay filed by Barnett Banks, Inc., Dealer Financial Services, West Central Region, as attorney-in-fact for Barnett Bank of Tampa assignee of Barnett Banks, Inc., is denied.

2. The Debtors shall pay to Barnett monthly payments of principal and interest, based on the total principal amount due to Barnett, the contract pre-default rates of interest, and an amortization based on the former remaining term of the former first mortgage. These payments shall be due on the former monthly due date of the Barnett note, and shall continue until confirmation of the Debtors' Chapter 13 plan or earlier order of this Court.