**In re Joey S. PELLEGRINO, Debtor.**

No. 01–35866.

United States Bankruptcy Court,
D. Connecticut.

Aug. 19, 2002.

Raymond L. Baribeault, Jr., Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C., New London, Connecticut, for debtor.

Thomas J. Farrell, Hunt, Leibert, Chester & Jacobson, PC, Hartford, Connecticut, for objector.

## MEMORANDUM OF DECISION ON OBJECTION TO CONFIRMATION OF PLAN

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

Presently before the Court is the above-captioned objection of Nationwide Home Mortgage Company (hereafter, "Nationwide") to confirmation of the Debtor's Chapter 13 Plan (hereafter, the "Objection").[1] The Objection is premised upon the presumedly dispositive legal principles recently articulated by a panel of the United States Court of Appeals for the Second

Circuit in *In re Canney*, 284 F.3d 362 (2d Cir.2002). Although *Canney* governs some aspects of the matter at bar, for the reasons which follow, it is not dispositive, and the Objection shall be OVERRULED.

## II. BACKGROUND

### A. The *Canney* Decision.

*Canney* held that the open-ended automatic stay of Section 362(a) of the Bankruptcy Code does not toll the passing of the deadline by which a debtor-mortgagor is required to exercise his right of redemption established under a Vermont state court judgment of strict foreclosure. 284 F.3d at 372–73. *Canney* further instructed that such redemption deadline was in fact tolled by Section 108 of the Bankruptcy Code for a fixed and limited period of time.[2] *Id.*[3] Consequently, an expansive reading of *Canney* could lead one to believe that all debtor-mortgagors who file their bankruptcy petitions after the entry of a judgment of strict foreclosure irretrievably forfeit their mortgaged property interest, absent timely redemption during the bankruptcy case, after the later of (i) the passing of the state law redemption deadline or (ii) 60 days after the bankruptcy order for relief.[4]

---

1. The Objection is Nationwide's *Amended Objection to Confirmation* filed May 16, 2002. Its original objection to confirmation (filed January 23, 2002) did not raise the issues which are currently *sub judice.*

2. Section 108(b) provides in pertinent part that—

    ... if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period of time within which the debtor ... may file any pleading, demand, notice ... cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

    (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (2001).

3. With respect to this central holding, *Canney* overruled at least two previously-reported Vermont bankruptcy court decisions. *See In re L.H. & A. Realty Co.*, 57 B.R. 265 (Bankr. D.Vt.1986); *In re Shea Realty*, 21 B.R. 790 (Bankr.D.Vt.1982).

4. The decision in *Canney* was rendered upon a motion for relief from stay in a Chapter 7 case (converted from Chapter 11); yet it declared the effect of its debtor's previous Chapter 13 case upon his mortgaged interest in real property.

## B. Posture of the Instant Case.[5]

The instant contest concerns the Debtor's effort to confirm a Chapter 13 plan (hereafter, the "Plan") which proposes to cure a payment default under a mortgage (hereafter, the "Mortgage") granted by him to Nationwide on his principal residence, known as and numbered 23 Chase Oaks Court #10, Groton, Connecticut (hereafter, the "Residence"). Prior to the filing of this bankruptcy case Nationwide was prosecuting a foreclosure action against the Debtor in Connecticut state court with respect to the Mortgage (hereafter, the "Foreclosure Action").[6] Nationwide named as additional defendants in that action (i) the Connecticut Housing Finance Authority (hereafter, "CHFA") and (ii) the Winding Hollow Owners' Association, Inc. (hereafter, "Winding Hollow"), whom, it alleged, were parties purportedly holding encumbrances on the Residence junior to the Mortgage (hereafter collectively, the "Junior Encumbrancers"). On November 26, 2001, Nationwide obtained a judgment of strict foreclosure[7] in the Connecticut Superior Court, establishing, *inter alia,* "law days" commencing December 17, 2001.[8] The first law day—December 17—was assigned to the Debtor; the second law day—December 18—went to CHFA, and the third—December 19—was designated for Winding Hollow.

■ On December 13, 2001 (hereafter, the "Petition Date"), prior to the passage of any law days, the Debtor commenced the instant bankruptcy case through the filing of a petition under Chapter 13, and an Order for Relief was simultaneously entered thereon. Neither the Debtor nor the Chapter 13 Trustee has exercised the Debtor's right of redemption, and no Chapter 13 plan has yet been confirmed. Although the parties disagree on whether the Debtor's law day has passed, they agree that the law days of the Junior Encumbrances have not passed. Even if they did not agree, this Court would find and conclude under principles of equitable estoppel that the law days assigned to the Junior Encumbrancers have not passed. Because Nationwide informed the Connecticut Superior Court, and one or more of the Junior Encumbrancers, in writing that the bankruptcy petition "operates as an automatic stay against assets of the [Debtor]", *see Claim for Stay by Reason of Bankruptcy* (dated December 17, 2001,[9]

---

5. The facts recited by the Court are uncontested between the parties.

6. The Foreclosure Action was pending in the Connecticut Superior Court, Judicial District of New London, bearing Docket No. CV 01–0560206 S.

7. The typical foreclosure in Connecticut is a "strict", or non-sale, foreclosure. Under circumstances not relevant here the Connecticut Superior Court can order a foreclosure by sale.

8. Connecticut is commonly referred to as a "title theory" state with respect to mortgages. In the typical mortgage relationship, prior to foreclosure, a mortgagee holds defeasible *legal* title to the mortgaged property interest, and the mortgagor retains a defeasible *equitable* interest known as the "equity of redemption". Upon the mortgagor's payment default, the mortgagee can unify title in itself by foreclosing the mortgage—a process which involves, *inter alia*, the extinguishment of the mortgagor's equity of redemption. Conversely, the mortgagor has an opportunity to exercise his equity of redemption by payment of the mortgage debt by the law day assigned him by the Superior Court. Although junior encumbrancers are not generally in contractual privity with the mortgagee, Connecticut law grants them redemption rights in foreclosure similar to that granted the mortgagor. Redemption unifies legal and equitable title to the mortgaged property interest in the redeeming party; foreclosure unifies legal and equitable title in the mortgagee.

9. Service by mail upon (i) CHFA's General Counsel and (ii) Attorney Donna R. Skaats was certified by Richard Leibert on December 17, 2001.

and filed in the Foreclosure Action on or before December 19, 2001 [10]), it is estopped from now claiming that the Junior Encumbrancers had an obligation to redeem the mortgaged property interest on their originally-scheduled law days.[11]

Nationwide argues on the strength of *Canney* (i) that the Debtor's equity of redemption expired during the pendency of this bankruptcy case, (ii) that the Debtor therefore no longer holds an ownership interest in the Residence, and hence (iii) the Plan may not seek to cure a default under the Mortgage. The Debtor resists each of these conclusions.

## III. DISCUSSION

In light of *Canney* it appears that the operation of Code Section 108(b) caused the Debtor to lose his *state law-based* right of redemption on or about February 11, 2002. However, because *Canney* was rendered in the context of a Vermont Chapter 7 case, that conclusion is not dispositive of the matter at bar. Rather, the essential question before the Court at this time is whether any aspect of this *Connecticut* case, pending under *Chapter 13,* serves to extend the time for the Debtor to cure his default under the Mortgage sufficiently beyond the period allowed under *Canney* for his exercise of state law redemption rights.

### A. Permissible Plan Provisions.

Since the matter at bar is a plan confirmation contest, the appropriate starting points for analysis are those Bankruptcy Code sections setting out the parameters of a Chapter 13 Plan.[12] Code Section 1325 states, *inter alia,* that "the court shall confirm a [Chapter 13] plan if . . . the plan complies with the provisions of . . . chapter [13]. . . ." The proper bounds and objects of a Chapter 13 plan are found primarily within Section 1322, which provides in pertinent part as follows:

\*    \*    \*    \*    \*    \*

(b) . . . [T]he plan may—

\*    \*    \*    \*    \*    \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) *provide for the curing or waiving of any default,*

\*    \*    \*    \*    \*    \*

(5) *notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;*

\*    \*    \*    \*    \*    \*

(9) provide for the vesting of property of the estate, on confirmation of the plan

---

10. The Superior Court Clerk's date-stamp on this document is illegible.

11. Given this conclusion, it is unnecessary for this Court to determine whether in fact the automatic stay of Section 362(a) acted to toll indefinitely the passing of the law days of the Junior Encumbrancers.

12. The *Canney* Court did not follow this statutory road map even though it was declaring rights determined during the pendency of a Chapter 13 case. However, consideration of Code Sections 1322 and 1325 was not necessary in *Canney* since its declaration was rendered in the context of a subsequent Chapter 7 relief from stay matter, and not in that of a Chapter 13 confirmation contest. For that reason *Canney* is not preclusive of this Court's invocation and analysis of Code Sections 1322 and 1325.

or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

(c) *Notwithstanding subsection (b)(2) and applicable nonbankruptcy law —*

(1) *a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law*

\* \* \* \* \* \*

11 U.S.C. § 1322 (2001) (emphasis supplied). Section 1322(c)(1) is the key to resolution of the matter at bar. Its applicability in this case necessitates travel along an analytic path which extends beyond that involved in *Canney.*

## B. Section 1322(c)(1).

■ Under the specific circumstances of a given case, Section 1322(c)(1) and Section 108(b) perform the same general function—they each serve to extend, or "toll", in bankruptcy the time period available for a mortgagor to rectify a mortgage default. Yet there can be no doubt that as a later and more specific enactment,[13] Section 1322(c)(1), not Section 108(b), ultimately governs the deadline for mortgage default cure in a Chapter 13 plan confirmation context. In other words, a Chapter 13 debtor may argue in good faith that despite an apparent loss of his equity of redemption through the interplay of state law and Section 108(b) as established in *Canney,* he may in essence "revive" that equitable interest by confirming a Chapter 13 plan which, *inter alia,* utilizes Section 1322(c)(1) to cure the mortgage default.

Indeed, the substance of subsection (c)(1)—added to Section 1322 by the Bankruptcy Reform Act of 1994—embodies Congress' general intention to extend to Chapter 13 debtors an ample, uniform *federal* window for curing a mortgage default, even if that time extends beyond the period provided by state law and Section 108(b). *See* H.R.Rep. 103–834, 103rd Cong., 2nd Sess. (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, 3336; 140 Cong.Rec. H10,769 (Oct. 4, 1994) (subsection (c)(1) "*safeguards a debtor's rights in a chapter 13 case* by allowing the debtor to cure home mortgage defaults at least through the completion of a foreclosure sale under applicable nonbankruptcy law" (emphasis supplied)).

## C. Application of 1322(c)(1) to Strict Foreclosure.

■ The Court turns now to the more difficult task of applying Section 1322(c)(1) to the case at bar. Because Section 1322(c)(1) permits the curing of a mortgage default only until a property "is sold at a foreclosure sale", an initial analytical hurdle is encountered in attempting to interpret Section 1322(c)(1)'s foreclosure "sale" concepts in the context of a Connecticut *strict* foreclosure. Although at least one court has concluded that rights under 1322(c)(1) are simply unavailable to a debtor undergoing a non-sale foreclosure, *In re Stephens,* 221 B.R. 290 (Bankr. D.Me.1998), that view does not comport with the broad statement of Congressional purpose accompanying the enactment of 1322(c)(1), and frustrates uniformity by in-

---

**13.** *See, e.g., D. Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling"); *United States v. Mohammed,* 27 F.3d 815, 820 (2d Cir.1994) ("to the extent that the language of statutes conflict, later statutes receive precedence over earlier statutes . . .").

explicably discriminating against debtors undergoing non-sale foreclosure. The more appropriate approach is to attempt to translate into a strict foreclosure context the point of finality represented by Section 1322(c)(1)'s "sale" terminology. This is the approach employed in *In re Donahue*, 231 B.R. 865, 869–70 (Bankr. D.Vt.1998), wherein that court concluded that Section 1322(c)(1) permitted default cure until a mortgagee completed the "final action necessary to foreclose", which it concluded under Vermont *strict* foreclosure law was the recordation of a certified copy of the foreclosure judgment following the expiration of the time for redemption. *See* 12 V.S.A. §§ 4529, 4530. *But cf. Canney*, 284 F.3d at 369 n. 11.

While this Court agrees with *Donahue's* approach, it disagrees that the strict foreclosure analog to Section 1322(c)(1)'s "sold" reference is the "final action necessary to foreclose."[14] Rather, this Court looks to the essential concept embodied by Section 1322(c)(1)'s "sale" terminology, namely the *vesting of title*. Thus this Court must identify that point in the foreclosure process when title becomes vested in the mortgagee. Under the facts of this case the Court concludes that Section 1322(c)(1) permits the Debtor to cure his payment default under the Mortgage until the foreclosure process vests *unified legal and equitable title* to the Residence in Nationwide.

**D. Vesting of Title under Connecticut Strict Foreclosure Law.**

■ Because the law day of the Debtor has arguably passed per *Canney*, but the law days of the Junior Encumbrancers have not, *see* discussion at II.B., *supra*, the critical determination to be made here under Connecticut state law is whether Nationwide has unified legal and equitable title to the Residence in the resulting interstitial time period. Although the Connecticut appellate courts have not spoken directly to this question as stated, they have addressed the question of when a mortgagee's title becomes "absolute". Those authorities declare that title does not become absolute in a foreclosing mortgagee until the expiration of *all* law days— *i.e.* those of the mortgagor and all junior encumbrancers. *See, e.g., New Milford Savings Bank v. Jajer*, 244 Conn. 251, 256 n. 11, 708 A.2d 1378 (1998) (". . . the mortgagee's title does not become *absolute* until *all* eligible parties have failed to exercise their rights to redeem the property." (emphasis supplied)); *First Bank v. Simpson*, 199 Conn. 368, 373, 507 A.2d 997 (1986) ("A judgment of strict foreclosure vests *absolute title* in the foreclosing plaintiff upon the failure of the *other parties* to redeem the property." (emphasis supplied)); *City Lumber Co. of Bridgeport v. Murphy*, 120 Conn. 16, 25, 179 A. 339 (1935) (". . . a foreclosure decree has become *absolute* by the passing of the law days . . . ." (emphasis supplied)); *Barclays Bank of New York v. Ivler*, 20 Conn.App. 163, 166, 565 A.2d 252 (Conn.App.1989) ("The question . . . is whether the law *days* have run so as to extinguish the *defendant's* equity of redemption and vest title *absolutely* in the plaintiff." (emphasis supplied)).

---

**14.** Were this Court to follow the lead of *Donahue* blindly, it would conclude that Section 1322(c)(1) permits the curing of a mortgage default until the recordation of a Certificate of Foreclosure per C.G.S. § 49–16—the Connecticut analog of Vermont foreclosure judgment recordation per 12 V.S.A. § 4529. Although Connecticut law requires a foreclosing mortgagee to record a Certificate of Foreclosure for purposes of notice, *see, e.g., In re St. Amant*, 41 B.R. 156, 159 n. 6, it is clear that a Certificate of Foreclosure is not a muniment of title, *see id.;* Connecticut Standards of Title, Standard 19.2, and thus is not an essential element of a "sale" within the scope of Section 1322(c)(1).

Unfortunately, these judicial statements beg a further question—what is "absolute title"? Two different paradigms appear possible. First, "absolute" title could refer to the fee simple title resulting from the unification of the mortgagee's legal title and the mortgagor's equity of redemption. Second, it could describe something more—an "unencumbered" [15] or "clear" title resulting from such unification *and* the extinguishment of junior encumbrances. Under the latter concept title might be considered unified in the mortgagee upon the passing of the first—mortgagor's—law day, and thereafter becoming unencumbered by the passing of subsequent—junior encumbrancers'—law days. By contrast, if the former definition obtains, then the foregoing statements of the Connecticut authorities must be read to hold that the passing of the *first* law day does *not* unify title in the mortgagee; instead, such unification occurs only upon the passing of *all* law days.

This Court concludes that the Connecticut concept of absolute title refers simply to the title which results from the unification of mortgagor and mortgagee interests upon foreclosure. *See, e.g.,* Black's Law Dictionary 1331–32 (5th ed.1979) (defining "title", contrasting "absolute title" and "clear title", *inter alia.*). Thus the Connecticut authorities can be understood to state a rule whereby legal and equitable title are not unified in the mortgagee until *all* law days have passed. While there are certainly sound reasons for a contrary rule—*i.e.* one that provides that a mort-

gagee acquires *unified* title to a mortgaged property after the passing of the mortgagor's law day, and thereafter *unencumbered title* to that property after the passing of the law days of junior encumbrancers [16]—there is no support for such principle in Connecticut law, and this Court is not at liberty to impose it as a matter of federal law.

 Accordingly, for purposes of Section 1322(c)(1), a Connecticut property interest is "sold" in a strict foreclosure only after *all* the law days have passed. Consequently, where, as here, a mortgagee has not acquired unified, or absolute, title due to the fact that the law days of all junior encumbrancers have not passed, Section 1322(c)(1) affords the debtor-mortgagor an indefinite period of time [17] to confirm a Chapter 13 plan which cures a mortgage default.

## IV.  CONCLUSION.

For the foregoing reasons, Nationwide Home Mortgage Company's Amended Objection to Confirmation (Doc. I.D. No. 15) shall be **OVERRULED** by margin endorsement. The Debtor's Chapter 13 Plan shall be confirmed if otherwise confirmable.

---

**15.**  The Court uses this term vis-a-vis *junior* encumbrances only. The foreclosure process does not affect the property interests of *senior* encumbrancers, if any.

**16.**  Such a rule would comport more closely with broad notions of equity and common sense, as this Court is unable to construct a cogent argument why the presence of junior encumbrancers should aid a debtor in his

reorganization efforts or, more generally, why a mortgagor's acts in further encumbering the mortgaged property should work to his advantage in his relationship with the mortgagee.

**17.**  This time period is subject, of course, to dismissal or conversion of the Chapter 13 case, and therefore is not *unlimited.*