### In re Leilani TAYLOR.

**Leilani Taylor**

**v.**

### Vermont Housing Finance Agency.

No. 1:02–CV–214.

United States District Court, D. Vermont.

Dec. 3, 2002.

Geoffry F. Walsh, Vermont Legal Aid, Inc., Springfield, VT, Rebecca A. Rice, Cohen & Rice, Rutland, VT, for appellant.

S. Stacy Chapman, III, Chapman & Kupferer, Ltd., Rutland, VT, for appellee.

Kevin Purcell, U.S. Trustee, Albany, NY, pro se.

Jan M. Sensenich, White River Junction, VT, trustee pro se.

*Memorandum of Decision*

MURTHA, District Judge.

Appellant, Leilani Taylor ("Taylor"), appeals from an order of the United States Bankruptcy Court for the District of Vermont, dated July 25, 2002, rejecting her proposed Chapter 13 plan (the "Plan"). For the reasons set forth below, the ruling of the Bankruptcy Court is vacated, and the case remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

The essential facts are not in dispute. In October 1997, Taylor and her then-husband Frederick Daniels executed a $55,000 promissory note to Vermont National Bank, secured by a mortgage deed. The mortgage deed was assigned to Vermont Housing Finance Agency ("VHFA"), which commenced a foreclosure action in state court on September 7, 2001.

On November 21, 2001, the state court issued a Judgment Order and Decree of Foreclosure, setting May 21, 2002 as the date by which Taylor and her ex-husband had to redeem their property. On May 17, 2002, just before the redemption date,

Taylor filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. Taylor submitted a Chapter 13 plan on June 26, 2002 in which she proposed reinstating the VHFA mortgage and resuming her mortgage payments. VHFA objected, and the Bankruptcy Court ruled in favor of VHFA, finding that Taylor's bankruptcy petition had not stayed the expiration of the redemption period. The Bankruptcy Court reasoned that Taylor's rights under the mortgage expired upon entry of the foreclosure judgment, notwithstanding her continued right of redemption.

Quoting the Second Circuit's recent opinion in *Canney v. Merchants Bank*, 284 F.3d 362 (2d Cir.2002), the Bankruptcy Court held that "[a] foreclosure judgment vests full legal and equitable title to the property with the mortgagee, subject only to the mortgagor's 'equity of redemption,' which is a contingent equitable interest in the property, and limited rights of possession, rents, and profits of the property during the period of redemption." (Bankr. Op. at 3). Therefore, according to the Bankruptcy Court, "the debtor has no right to reinstate the mortgage in her chapter 13 plan; that right was extinguished when the foreclosure judgment was entered." (Bankr. Op. at 3).

Taylor retained the equitable right to redeem the property as of the date she filed her bankruptcy case, and that right was extended pursuant to 11 U.S.C. § 108(b). But, according to the Bankruptcy Court, that was Taylor's only remaining interest in her property. Having failed to redeem the property in a timely fashion, Taylor had nothing to cure.

■ On appeal to this Court, Taylor argues that *Canney* does not apply, and that 11 U.S.C. § 1322 provides her with a federal right to cure her default on her home mortgage. Accordingly, Taylor's appeal requires this Court to interpret Section 1322(c)(1) in light of *Canney*, and to address a live controversy that has defied consensus in the federal courts. In so doing, we review the Bankruptcy Court's rulings of law *de novo*. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990).

## II. DISCUSSION

Before discussing the merits of Taylor's arguments on appeal, she faces a procedural hurdle. According to VHFA, Taylor failed to raise the Section 1322 issue with the Bankruptcy Court and should therefore be precluded from arguing the applicability of the statute here. While Taylor's arguments have undoubtedly become more refined or this appeal, the legal issue presented was at least broadly before the Bankruptcy Court, namely, whether *Canney* applies in the context of Chapter 13.

■ Taylor may be faulted for failing to point the Bankruptcy Court to all of the relevant statutory authority governing this case, but her failure to do so has not waived consideration of the legal issue on appeal. *See In re McLean Indus., Inc.*, 30 F.3d 385, 387 (2d Cir.1994) ("Arguments made on appeal need not be identical to those made below if they involve only questions of law and additional findings of fact are not required.") (quoting *A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir.1993)). Because the broad issue now before the Court was preserved below, and the specific issue is clear from the record on appeal, the Court will exercise its discretion and address the merits of Taylor's arguments. *See In re Hilsen*, 119 B.R. 435, 439 (S.D.N.Y.1990) ("A district court sitting in a bankruptcy appeal has the power to consider any issue presented by the record on appeal, even if the issue was not presented to the bankruptcy court.").

## A. *Canney v. Merchants Bank*

In its ruling for VHFA, the Bankruptcy Court relied on the Second Circuit's recent decision in *Canney*. The Bankruptcy Court is correct that *Canney* presents an analogous factual situation. There, a financial institution sought to foreclose on certain loans, obtaining a foreclosure judgment from a Vermont state court "that specified the amounts due and a deadline for [debtor] to redeem." *Canney*, 284 F.3d at 366. After the foreclosure judgment issued, but before the redemption period expired, debtor filed for bankruptcy protection. At issue generally was whether certain of the bankruptcy code's automatic stay provisions apply "when a mortgagor files for bankruptcy during the equity of redemption period following entry of judgment in a Vermont strict foreclosure action." *Id.* at 366. In particular, the *Canney* court examined the applicability of the automatic stay provisions in 11 U.S.C. § 362(a), and 11 U.S.C. § 108(b).

The *Canney* court ruled against the debtor: "Because [debtor] sought bankruptcy protection after the foreclosure judgment had been filed but during the redemption period specified in that judgment, his equity of redemption, a contingent equitable interest in the property subject to extinguishment absent redemption within the allotted time, became 'property of the estate' within the meaning of federal bankruptcy laws." *Id.* at 370. In other words, the bankruptcy estate contained nothing more than a contingent equitable interest in the property; having failed to redeem the property within the time provided by the State Court judgment of foreclosure, that contingent interest disappeared. As the *Canney* court concluded: "[W]e hold that the period of equitable redemption was not stayed when [debtor] filed a Chapter 13 bankruptcy petition on September 14, 1998 .... Thus,

having failed to redeem during the period of equitable redemption, neither the mortgagor nor the Trustee has a legally cognizable right or interest in the property that justifies encumbrance by federal bankruptcy law." *Id.* at 373.

Read broadly, as the Bankruptcy Court did, *Canney* precludes Taylor's arguments before the Court today. One court has subsequently noted, "an expansive reading of *Canney* would lead one to believe that all debtor-mortgagors who file their bankruptcy petitions after the entry of a judgment of strict foreclosure irretrievably forfeit their mortgaged property interest, absent timely redemption during the bankruptcy case, after the later of (i) the passing of the state law redemption deadline or (ii) 60 days after the bankruptcy order for relief." *In re Pellegrino*, 284 B.R. 326, 327–29 (Bankr.D.Conn.2002). *Canney*, however, should not be interpreted so broadly, as the *In re Pellegrino* court itself held. *Id.* at 329–30.

*Canney* focused exclusively on Section 108(b), which applies to remedying defaults generally, extending the time to cure or redeem by as much as 60 days. In contrast, this case is governed by Section 1322(c)(1), which contains provisions uniquely tailored to protect homeowners' primary residences. While the facts in *Canney* are analogous to the facts presented here, the governing law is substantively different.

## B. *Section 1322(c)(1)*

Section 1322(c)(1) provides, in relevant part, that a Chapter 13 plan shall:

(b)(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

. . . .

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

The plain language of Section 1322(c)(1) provides "an independent right to cure under the Bankruptcy Code, apart from the debtor's right to redeem under state law which is itself extended by § 108(b)." *In re Spencer,* 263 B.R. at 231. Under the express terms of Section 1322(b)(1), a homeowner can cure a default on her principal residence until that residence is sold at a foreclosure sale under the applicable nonbankruptcy law. *See In re Beeman,* 235 B.R. 519, 523 (Bankr.D.N.H.1999) ("In essence, §§ 1322(b) and (c) allow a Chapter 13 debtor to cure and reinstate a mortgage on the debtor's principal residence up until the time 'such residence is sold at a foreclosure sale' "). Vermont's foreclosure law supplies the relevant nonbankruptcy law. *See generally* 12 V.S.A. §§ 4523, *et seq.*

■ Vermont is one of only two states where strict foreclosure, as opposed to a foreclosure sale, is the normal method of foreclosure. *See In re Frazer,* 238 B.R. 262, 263 n. 3 (Bankr.D.Vt.1999), *rev'd on other grounds* 253 B.R. 513 (D.Vt.2000). In Vermont, a mortgage conveys legal title to the mortgagee at the time the mortgage is granted. *Canney,* 284 F.3d 362, 369. The mortgagee takes complete ownership of the property once a condition in the mortgage has been broken. *See id.* (citing *Rassman v. American Fid. Co.,* 142 Vt. 623, 626, 460 A.2d 461 (1983)). Accordingly, a foreclosure sale is not required to vest complete ownership in the mortgagee. Instead, "[a] foreclosure judgment vests full legal and equitable title to the property with the mortgagee, subject only to the mortgagor's 'equity of redemption,' which is a contingent equitable interest in the property." *Canney,* 284 F.3d at 369.

■ In a strict foreclosure proceeding, the mortgagor retains the right of redemption until the date specified in the judgment of foreclosure. *See, e.g., Mitchell v. Aldrich,* 122 Vt. 19, 26, 163 A.2d 833 (1960). Until that date has passed, the mortgagor retains a property right in the property, namely a contingent interest subject to her right of redemption. *See Canney,* 284 F.3d at 369. As one court has explained, "[u]nder Vermont law if no one redeems foreclosed property within the prescribed period, the foreclosing mortgagee, pursuant to the Vermont strict foreclosure procedure, obtains full and complete title and has the right to sell the property and retain the surplus, if any." *Stowe Ctr., Inc. v. Burlington Sav. Bank,* 141 Vt. 634, 637, 451 A.2d 1114 (1982).

Since Vermont does not require a foreclosure sale to vest ownership in the mortgagee, and Section 1322(c)(1) provides an independent federal right to cure until the date of a foreclosure sale, the issue squarely presented in this case is when the Section 1322(c)(1) right to cure expires in a strict foreclosure regime.

C. *Applying Section 1322(c)(1) to Strict Foreclosures*

■ VHFA argues that Section 1322(c)(1) is inapplicable in the context of strict foreclosures and never creates a right to cure. VHFA is correct that "an initial analytical hurdle is encountered in attempting to interpret Section 1322(c)(1)'s foreclosure 'sale' concept in the context of a ... strict foreclosure." *In re Pellegrino,* 284 B.R. 326, 330–31. At least one court has held that Section 1322(c)(1) simply

does not apply in the absence of a foreclosure sale. *See Schinck v. Stephens (In re Stephens)*, 221 B.R. 290, 297 (Bankr.D.Me. 1998) ("Because the rights and interests of mortgagees and mortgagors under Maine's strict foreclosure procedures are determined without a 'foreclosure sale,' the federal law extension of cure rights embodied in § 1322(c)(1) has no application"). Such a reading, however, fails to vindicate the important interests represented in Section 1322(c)(1) and threatens to create an artificial distinction between states that happen to use foreclosure sales and those few that proceed most frequently through strict foreclosure.

The court in *In re Pellegrino* adopted a more persuasive approach, looking to the substantive state law to define what counts as a "foreclosure sale" in a strict foreclosure state like Connecticut. The *In re Pellegrino* court held that "[t]he more appropriate approach is to attempt to translate into a strict foreclosure context the point of finality represented by Section 1322(c)(1)'s 'sale' terminology." *In re Pellegrino*, 284 B.R. 326, 330–31. Instead of focusing on an overly literal interpretation of the word "sale," the *In re Pellegrino* court found that it referred more substantively to "the vesting of title." *Id.* at 331–32. Therefore, the challenge in that case, and the challenge again presented here, is to "identify that point in the foreclosure process when title becomes vested in the mortgagee." *Id.*

This approach also accords most closely with the body of cases addressing the related question of when a foreclosure is deemed to have occurred for purposes of Section 1322(c)(1). While some cases have found that the term "foreclosure sale" unambiguously refers to the date of the foreclosure auction, *see, e.g., McCarn v. WyHy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 161 (10th Cir. BAP 1998), other

courts have looked instead to governing state law to provide the content of "foreclosure sale." Two well-reasoned cases, in particular, have held that "foreclosure sale" refers to the date on which the process of transferring ownership and title of property to a buyer is complete. *See In re Beeman*, 235 B.R. at 525; *In re Spencer*, 263 B.R. at 231 (referring to state law and finding that, in Illinois, "foreclosure is not complete until an order confirming the sale has been entered"); *see also In re Randall*, 263 B.R. 200, 203 (D.N.J.2001) (holding that Section 1322(c)(1) right to cure is not extinguished until rights of redemption have expired under state law).

The reasoning in *In re Beeman* is instructive. There, the court identified the definition of "sale" as the "transferring of ownership and title regarding property to a buyer," and found that Section 1322(c)(1) "envisions a debtor's rights being terminated upon the completed transfer of title and ownership to a buyer through a foreclosure sale. Title and ownership generally pass through foreclosure upon the completion of a process, and not upon the occurrence of a single event such as a foreclosure auction." *In re Beeman*, 235 B.R. at 525.

Admittedly, conflicting authority exists. *See id.* at 524 (citing cases holding that Section 1322(c)(1) unambiguously refers to the date on which the gavel falls in a foreclosure auction); *see also In re Crawford*, 232 B.R. 92, 94 (Bankr.N.D.Ohio 1999) (citing pre–1994 cases). But in order to find the appropriate Vermont analogue to other states' foreclosure sales, the process-based analysis in *In re Beeman* and *In re Pellegrino* is both necessary and appropriate. Therefore, the Section 1322(c)(1) right to cure is available until unencumbered title to the property passes to the mortgagee.

■ In Vermont, under its strict foreclosure law, the mortgagee's ownership of the subject property following a foreclosure judgment remains encumbered until the date of redemption specified in the foreclosure judgment has passed. *See Mitchell*, 122 Vt. at 26, 163 A.2d 833 ("[O]wnership of the mortgagee in the encumbered property is subject to the mortgagor's equity and right to redeem."); *cf. In re Pellegrino*, 284 B.R. 326, 332 ("[Where] a mortgagee has not acquired unified, or absolute title due to the fact that the law days of all junior encumbrancers have not passed, Section 1322(c)(1) affords the debtor-mortgagor an indefinite period of time to confirm a Chapter 13 plan which cures a mortgage default"); *In re Randall*, 263 B.R. at 203 ("Until the equity of redemption is extinguished, a debtor still retains an interest in the property."). Accordingly, the operative date of the "foreclosure sale" specified in Section 1322(c)(1) is the date on which all of the debtor's rights in the subject property are extinguished, including rights of redemption. In this case, Taylor filed for Chapter 13 relief prior to the expiration of her equity of redemption, making Section 1322(c)(1) available.

### D. *Waiver*

■ VHFA argues in the alternative that Taylor has waived her right to a Section 1322(c)(1) cure by not demanding a foreclosure sale. Vermont foreclosure law affords debtors the right to request a foreclosure sale instead of permitting a mortgagee to proceed by strict foreclosure. *See* 12 V.S.A. § 4431a. However, VHFA's proposed rule would have the anomalous effect of forcing a debtor to exercise her option for a foreclosure sale in order to invoke Section 1322(c)(1) to prevent the foreclosure sale from occurring. There is no reason to think that the debtor's apparent ability to choose the form of the cutoff

of her right to cure—i.e., choosing between strict foreclosure and a foreclosure sale—should have any impact on the range of remedies available before that cutoff event.

■ This is consistent with the underlying purpose of the statute. Section 1322(c)(1) embodies "a strong Congressional intention ... to aid debtors in their efforts to retain their residences." *In re Spencer*, 263 B.R. 227, 229 (Bankr.N.D.Ill. 2001); *In re Beeman*, 235 B.R. at 525–26; *cf. In re Hoggle*, 12 F.3d 1008, 1010 (11th Cir.1994) ("A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13."). Moreover, Section 1322(c)(1) was added in 1994 expressly to rationalize pre-existing law concerning a debtor who lost the right to cure a home mortgage under Chapter 13. *See, e.g., In re Beeman*, 235 B.R. at 524 (citing conflicting cases and noting "Congress enacted § 1322(c)(1) in an effort to resolve this confusion and create a uniform standard."); *In re Crawford*, 232 B.R. at 95 (same).

■ Section 1322(c)(1) would hardly bring coherence to the variety of state foreclosure laws if its application turned on each state's foreclosure procedures. Under VHFA's proposed interpretation, Section 1322(c)(1) would, for example, be available in most foreclosure actions in Maine, but not in Vermont or Connecticut. Congress sought to create a uniform federal standard for curing default on a home mortgage and this Court will not adopt a statutory interpretation at odds with that intent.

### E. *Right to Cure versus Right of Redemption*

VHFA also argues that Taylor's arguments improperly confuse the right to cure with the right to redeem property. VHFA

is plainly correct that there are important substantive differences between redemption and cure:

> A 'cure,' as allowed under section 1322(b), leaves most of the terms of the underlying loan agreement in effect, and merely allows the debtor to reverse any acceleration of the loan, caused by default, so that the debtor can 'catch up' on the defaulted amounts while maintaining current payments. The right to redeem property, on the other hand, does not allow the debtor to reverse acceleration on the loan and catch up payments, but rather requires the debtor to pay the purchaser of the property the sum that it paid at a foreclosure sale plus interest and costs within a stated period of time.

*In re McCarn,* 218 B.R. at 162 (internal quotation marks and citations omitted).

■ There is also no doubt the debtor's rights to cure under state law are extinguished at the date of the foreclosure judgment. But Taylor is not seeking to cure under Vermont's foreclosure law. Instead, she is seeking bankruptcy protection under federal law, and Section 1322(c)(1) creates an independent federal right to cure. Taylor's right of redemption is relevant only to the extent that it provides her with substantive state law property rights in the subject property sufficient to guarantee the availability of Section 1322(c)(1) relief.

■ It is important to note that Section 1322(c)(1) does not automatically provide a right to cure whenever Vermont's more limited right of redemption is available. First, Section 1322(c)(1) is only available to cure a lien on a debtor's principal residence. Second, and even more basically, this particular federal right to cure is only available to homeowners who seek the protection of Chapter 13. Therefore, Section 1322(c)(1) does not replace Vermont's limited rights of redemption with a federal right to cure but instead provides targeted federal relief for homeowners who have sought bankruptcy protection.

### III.  CONCLUSION

For the reasons set forth above, the order of the Bankruptcy Court is VACATED and the case REMANDED for further proceedings consistent with this opinion.

SO ORDERED.