## In re Nathaniel & Juanita CAMPBELL, Debtors.

Bankruptcy No. 87–02989–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Jan. 27, 1988.

Nathaniel & Juanita Campbell, pro se.

Robert L. Roth, Trustee, Miami, Fla.

Alec Ross, N. Miami Beach, Fla., Michel Huysman, Miami, Fla., for debtors.

## ORDER MODIFYING ORDER OF DISMISSAL

THOMAS C. BRITTON, Chief Judge.

The debtors' motion for rehearing (CP 10) of the Order Dismissing Case dated November 13, 1987 (CP 9) was heard December 9. The Order is modified in one particular, but in all other respects it is reaffirmed.

The case was dismissed on a mortgagee's motion upon the ground that a foreclosure sale *before* bankruptcy had cut off the option for these debtors to cure their mortgage default through a chapter 13 plan, and the only purpose of this bankruptcy was to cure that default. This court relied upon *In re Glenn*, 760 F.2d 1428, 1442 (6th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

### In re Glenn

Recognizing the wide disparity in the decisions of bankruptcy courts, based in part on the many divergences in state property laws, *Glenn* held that, in construing this federal statute, the cut-off date is the date of the sale. The Court said:

> "In summary, we hold that under 11 U.S.C. § 1322(b) a Chapter 13 debtor may cure a default on a mortgage on his principal residence even when the debt has been accelerated and a judgment of foreclosure has been entered *provided that no foreclosure sale has taken place. Once the property has been sold, the right to cure the default and reinstate the terms of the mortgage under section 1322(b) ceases.*" (Emphasis added).

The debtors first challenge the soundness of *Glenn*. However, the Court's opin-

ion, endorsed en banc, reviews all the decisions that antedated it and fully states its rationale, which I find completely persuasive. The Supreme Court has declined to review the decision. Unless our Circuit directs otherwise, I shall continue to follow *Glenn. In re Martinez,* 76 B.R. 217 (Bankr.S.D.Fla.1987).[1]

### The Date of the Sale

With more plausibility, the debtors also argue that under Florida decisions, a judicial "sale" does not take place until the sale has become final under the provisions of *Fla.Stat.* § 45.031(1)–(5).

Under this statute, the clerk advertises and holds a public auction sale, then "promptly" files a certificate of sale. Ten days after that certificate, the clerk files a certificate of title, "if no objections to the sale are filed within 10 days after filing the certificate of sale". The statute then provides that:

> "When the certificate of title is filed the sale shall stand confirmed, and title to the property shall pass to the purchaser named in the certificate without the necessity of any further proceedings or instruments." § 45.031(5).

The statute further provides that:

> "In cases when a person has an equity of redemption, the court shall not specify a time for the redemption, but the person may redeem the property at any time before the sale." § 45.031(1).

In *Allstate Mortgage Corp. of Florida v. Strasser,* 286 So.2d 201, 203 (Fla.1973), the Supreme Court, in deciding when the right of redemption from foreclosure judgments expires under the foregoing statute, said:

> "we hereby find that the Legislature intended to adopt the recognized [by the Florida court] meaning of the word 'sale' and that the sale did not take place until ownership of the property was transferred. Said transfer takes place according to § 45.031(3), Fla.Stat., ten days after

the day of the sale, upon no objections being filed thereto and issuance of the certificate of title."

The Court held, therefore, that the right of redemption did not expire until issuance of the certificate of title.

■ I am persuaded, however, that it is precisely this kind of vagary introduced by conflicting state statutes and decisions that *Glenn* intended to avoid:

> "we avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next." *Glenn,* 760 F.2d at 1436.

The term "sale" ordinarily denotes the auction event, not the ultimate judicial approval of the sale or the subsequent formal passage of title. The Florida statute recognizes this distinction by providing a certificate of *sale* immediately following the auction, and a certificate of *title* after all objections are finally resolved and the right of redemption has expired. Any other interpretation would lead inevitably to a morass, which is well illustrated by the application of Florida law to the case before me.

Within ten days after the sale and issuance of the certificate of sale, these debtors filed objections to the sale, then filed for bankruptcy before the objections were heard, staying further proceedings in the State court under 11 U.S.C. § 362(a). With the possibility of appeals, that status could literally continue for years after the clerk's auction and certificate of sale during which, under Florida law, no "sale" had yet occurred. The avowed purpose in *Glenn* is to prevent, not permit, manipulation of the cut-off date by the debtor through the application of state law.

I am fortified in my understanding of the meaning of "sale" as used in *Glenn* by the fact that the first bankruptcy court deci-

---

**1.** After studying this issue from the perspective of Florida property law, the authors of "How the Foreclosure Process Affects a Ch. 13 Debtor's Home in Florida," *Fla.Bar.J.,* Dec. 1987 at 59, endorse *Glenn* and say:

> "The elevation of the importance of the need for uniformity and its corollary de-emphasis on state law would be a great step forward in the direction of more effectively serving the intended purposes of § 1322 of the Bankruptcy Code."

sion rejected[2] in the *Glenn* opinion was *In re Johnson*, 29 B.R. 104 (Bankr.S.D.Fla. 1983), in which I held exactly what movants now urge—that the Florida statute and case law (relied upon by movants) date the sale on the day the certificate of title is issued. I relied upon the statute and Florida decision discussed above. The Florida decision is based on the Florida concept that the mortgage "subsists until it merges into the title certificate issued after the foreclosure sale." *Johnson* at 105 [citations omitted].

Because *Glenn* expressly rejected my conclusion, I *know* that the *Glenn* court could not have intended that its decision be applied as this debtor urges. I had relied on the unique quirks of state law, the precise briar patch *Glenn* is designed to avoid.

It follows that the right of these debtors to reinstate and cure the mortgage default in installments under § 1322(b)(5) expired before bankruptcy, frustrating the sole purpose for which this bankruptcy was filed. The dismissal was, therefore, entirely appropriate.

### The Debtors' Right of Redemption

As has been pointed out, these debtors have not yet lost their right of redemption. It will not expire unless their objections to the sale are finally overruled and a certificate of title is issued.[3] It must be noted, however, that redemption merely permits the immediate and complete satisfaction of the debt. As stated in *Glenn:*

> "Finally, we hold that section 1322(b)(3) does not permit debtors to spread payment of redemption amounts over the entire life of their Chapter 13 plans." (760 F.2d at 1442–43).

Since bankruptcy adds nothing to and does not alter the debtors' rights under state law, neither the pendency nor the dismissal of the bankruptcy case has any effect on redemption.

### Modification of the Order of Dismissal

The Order dismissing this case did so with prejudice to the filing of any bankruptcy petition by either debtor earlier than one year after the order becomes final. (CP 9). The debtors have, therefore, asked that the Order be modified to permit another chapter 13 petition if and when they succeed in vacating the foreclosure sale.[4]

I agree that they should have this opportunity. The Order of November 13 is modified to permit the filing of another chapter 13 petition by these debtors if and when they secure a final order vacating the State court foreclosure sale of July 13, 1987. In all other respects, the Order of November 13 is reaffirmed.

---

2. See headnote 1.

3. The 60–day extension provided in 11 U.S.C. § 108(b) for "the *trustee*" to cure a default is not applicable to a chapter 13 debtor. It is made expressly available to a chapter 11 debtor by § 1107(a); however, it is not included among the trustee's powers granted the chapter 13 debtor. § 1303. Furthermore, the automatic stay does not toll or extend the running of the state statutory period of redemption. *Glenn* at 1442.

In chapter 13, therefore, the period of redemption is entirely dictated by state law.

4. The foreclosure sale was July 13, 1987. On December 9, 1987 the parties were requested to obtain a ruling on the debtors' objections and this court instructed debtors' counsel to submit an order granting immediate stay relief under § 362(d) for that purpose. No order was submitted and no effort has been made to obtain a decision.