**In re Alice L. DUNLAP, James and Catherine Mitchell, Debtors.**

**Alice L. DUNLAP, James and Catherine Mitchell, Plaintiffs/Appellees,**

v.

**CASH AMERICA PAWN OF NASHVILLE, Defendant/Appellant.**

**No. 3:92–0954.**

United States District Court, M.D. Tennessee, Nashville Division.

Sept. 17, 1993.

William Randall O'Bryan, Jr., Anita L. Whisnant, Trabue, Sturdivant & DeWitt, Nashville, TN, for appellant Cash America Pawn of Nashville.

Thomas Charles Nance, Thomas C. Nance & Associates, Nashville, TN, for debtors and appellees Alice L. Dunlap, James Mitchell, Catherine Mitchell.

## MEMORANDUM

WISEMAN, District Judge.

Cash America Pawn ("Cash America"), a licensed pawnbroker whose services the debtors Alice Dunlap and James and Catherine Mitchell had employed before filing for bankruptcy, appeals an order of the bankruptcy court stating that Chapter 13 debtors may utilize the protection of 11 U.S.C. § 1322(b) up to the point of sale of pawned goods. Basically, Cash America argues that, once a debtor fails to redeem his or her pawned goods within the statutory time set for redemption, this debtor loses any interest in the property and this property cannot be considered part of the bankruptcy estate. The bankruptcy court ruled otherwise, holding that a pawnbroker held a secured interest in pawned property until this property was sold, and after that point a debtor may not seek to modify the rights of a secured claim holder under 11 U.S.C. § 1332. 143 B.R. 859. Accordingly,

Cash America was to turn over any unsold pawned property to the debtors and was then to receive payment on the pawn loans under the confirmed bankruptcy plan. This order was stayed pending appeal.

## I

The facts as stated by the bankruptcy court are binding herein unless clearly erroneous. Fed.R.Bankr.Pro. 8013. These facts, as found below, include:

On July 22, 1991, Alice L. Dunlap pawned her 1983 Cadillac Seville to Cash America Pawn, a licensed pawnbroker under Tenn.Code Ann. § 45–6–201 *et seq.* Dunlap received a loan of $2,500 with a "due date" of August 22, 1991. The finance charge was $625: $50 designated as "interest" and $575 as "service charge." The Annual Percentage Rate for this transaction was 300 percent.

The contract gave Dunlap 50 days after "maturity" of the loan in which to "redeem" her car. Fifty days is the minimum statutory redemption period required by Tenn.Code Ann. § 45–6–211. At expiration of this 50–day period, the contract and Tenn.Code Ann. § 45–6–211 required Cash America to give the debtor 10 days' notice that the pledged property must be redeemed or it "will be forfeited to the pawnbroker under your agreement; and your right to redeem your pledged property will thereafter be divested." Tenn.Code Ann. 45–6–211(c).

Dunlap failed to repay Cash America on the due date. The redemption period in the contract expired on October 21, 1991. On October 11, 1991, Dunlap filed a Chapter 13 petition.

Dunlap's Chapter 13 plan treated Cash America as a secured claim holder to be paid $3,125 over 32 months as $100 per month plus 10 percent interest. On November 4, 1991, Dunlap filed a complaint under 11 U.S.C. § 542 for turnover of the 1983 Cadillac Seville. Cash America objects to confirmation and objects to turnover.

. . . .

On July 12, 1991, James D. Mitchell pawned a camera, necklace and chain to Cash America for a $35 loan. Mitchell's loan had a due date of August 12, 1991. The Mitchell contract called for a finance charge of $7.00: $.70 interest and $6.30 "service charge," for a total payment due of $42 and an Annual Percentage Rate of 240 percent.

On September 30, 1991, Cash America mailed Mitchell the 10–day notice required by Tenn.Code Ann. § 45–6–211. October 12, 1991 was designated as the last day for Mitchell to redeem the pledged property. Mitchell failed to redeem and the pledged items were placed for sale by Cash America. On October 21, 1991, Mitchell filed a Chapter 13 petition. Prior to the petition, the necklace pawned by Mitchell was sold. The camera and chain remain in Cash America's possession.

Mitchell's Chapter 13 plan treats Cash America as a secured creditor with a secured claim of $100 payable at the rate of $15 per month with 10 percent interest. On October 24, 1991, Mitchell filed a motion for turnover of the necklace, camera and chain. Cash America objects to turnover.

Bankruptcy Court Order of Aug. 24, 1992, at 860–61 (footnotes omitted).

Given these facts and relying largely on the decision of *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), the bankruptcy court ruled that "Dunlap and Mitchell retain their rights under § 1322(b) with respect to pawned collateral until the pledged property has been sold or otherwise disposed of by the pawnbroker." Bankruptcy Court Order at 863. The bankruptcy court further ruled that 11 U.S.C. § 542(a) required turnover of the unsold, pawned property to the debtors, contingent on the debtors' provision of adequate protection to Cash America's interests under sections 361 and 363 of Title 11. Cash America appealed both holdings.[1]

---

**1.** The Appellees, Alice Dunlap and James and Catherine Mitchell, filed a suggestion of moot-

ness concerning the appeal, arguing that their cases had been dismissed from bankruptcy

## II

A bankruptcy judge's legal conclusions are reviewed de novo by the district judge, according no presumption of correctness to the previous court's interpretation of the applicable law. *Boone Coal & Timber Co. v. Polan,* 787 F.2d 1056, 1062 (6th Cir. 1986); *see also In re Daniels–Head & Associates,* 819 F.2d 914, 918 (9th Cir.1987) (stating that "[t]he district court acts as an appellate court, reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo."); *In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985); *BancBoston Mortgage Corp. v. Ledford,* 127 B.R. 175, 177 (M.D.Tenn.1991); *In re Spain,* 103 B.R. 286, 289 (N.D.Ala.1988). In reviewing anew the issues considered by the bankruptcy court, different conclusions are reached.

First, the bankruptcy court's conclusion that the Sixth Circuit's decision in *Glenn* dictated that the modification remedy of section 1322(b) attached to pawned personalty up to the point of sale is controvertible. The problem for the Sixth Circuit in *Glenn* was to set a limit on the time in which a § 1322 remedy could be sought by a debtor with respect to a foreclosed home, "with the potential points [of cut-off] in the progress of events ranging from the date of first default *to the day the redemption period expires following sale* [of the home]." *Id.* at 1435 (emphasis added). For the *Glenn* court, the end of the statutory redemption period set the latest possible time at which § 1322 could be invoked, and this point was considered too late in the process, too prejudicial to a creditor, such that an earlier cut-off point—the point of sale of a foreclosed home—was chosen.

In the present case, choosing the point of sale as the cut-off period for application of § 1322 actually imposes a later cut-off period than that chosen in *Glenn,* for a sale of pawned goods can only occur *after* the statutory redemption period has run. *See* Tenn.Code Ann. § 45–6–211. A right of redemption continues in a foreclosed home after the sale, *see, e.g.,* Tenn.Code Ann. § 66–8–101 (Supp.1992). Therefore, by the bankruptcy court's own method of seeking to apply the logic of *Glenn* to the realm of personalty, the point of sale is an inappropriate cut-off point.

■■■ An additional problem arises with use of the point of sale as the cut-off point, in that unredeemed, pawned property cannot be treated as part of the bankruptcy estate. In *Glenn,* the Sixth Circuit dealt with property that the debtors still had a legal interest in—sold or foreclosed homes—because the statutory redemption period had not run. *See In re Glenn,* 760 F.2d at 1429–30. In this case, once the statutory redemption period has run, the statutory notice requirements have been met,[2] and the pawned goods are not redeemed, the debtor forfeits "all right, title and interest of, in and to the pledged property and the debt becomes satisfied." Tenn.Code Ann. § 45–6–211(e) (Supp.1992). Only property in which a debtor has a legal or equitable interest may be property of the estate, 11 U.S.C. 541(a), and although the definition of estate property contained in § 541 is meant to be expansive, it is not meant "to enhance the nature or extent of the debtor's interest in property as that interest exists at the time a bankruptcy petition is filed. The trustee or debtor in possession succeeds to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition is filed." *In re All Chemical Isotope Enrichment, Inc.,* 127 B.R. 829, 837 (Bankr.E.D.Tenn. 1991) (citations omitted). And to determine the extent of an estate's interest, the court must look to property rights defined under state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re All Chemical*

---

court and that the property in question would remain with the Appellant, Cash America. As of this date, however, the debtors' cases have not been dismissed, and so this appeal proceeds. Appellees filed no brief in opposition to the Appellant's.

**2.** The bankruptcy court took judicial notice of the fact that all statutory notice requirements had been met by the appellant, given the lack of argument on this issue. *See* Bankruptcy Court's Order of Aug. 24, 1992, at 860 n. 1.

*Isotope Enrichment, Inc.,* 127 B.R. at 837. As set out above, Tennessee law extinguishes all rights of the debtor in pawned property once the statutory redemption requirements have been met and the period has passed. Once redemption is no longer possible, the debtor loses any legal or equitable interest in a pawned good, and thus this good cannot be considered part of the bankruptcy estate. *See In re Jackson,* 133 B.R. 541 (Bankr.W.D.Okla.1991). Accordingly, after the redemption period has run, a debtor may not seek to cure or modify the pawn contract under § 1322, because this remedy applies only to goods in which the estate retains an interest. *See* 11 U.S.C. § 1322(b) (cure, waiver, or modification rights of the section applicable only to the rights of secured or unsecured claim holders).

Disavowal of the point-of-sale conclusion creates the problem of finding a satisfactory cut-off point. The most natural point, and one which the appellant does not disagree with, is the end of the redemption period. Given the relatively short period for redemption, setting the end of this period as the cut-off point is not prejudicial to creditors. This point is not prejudicial to debtors for it does not encroach on their property rights as set by state law. Moreover, this point is "a measurable, identifiable event of importance in the relationship of parties." *Id.* at 1435. It introduces a "new element" into the debtor-creditor relationship, with ownership passing to the pawnbroker after giving notice to the debtor that unless she acts she will lose rights to the property. Finally, this is an event which all pawnbroker statutes have in common. Although states differ in the lengths of their redemption periods, all states within the Sixth Circuit have statutory limits on the redemption of pawned goods. *See* Bankruptcy Order of Aug. 24, 1992, at 862 n. 4. And so this point provides an easily discernible cut-off for the application of § 1322. *See In re Glenn,* 760 F.2d at 1435.

■ Under this test, only the automobile of Dunlap was possibly property of the estate. Alice Dunlap filed her petition for relief on October 11, 1991, and the redemption period was to end shortly thereafter. Since the automatic stay provision of § 362 has expressly been ruled not to toll the running of a statutory redemption period, *In re Glenn,* 760 F.2d at 1440, the only available protection to this property for the estate was through 11 U.S.C. § 108. Because of the enlargement of time provided under § 108(b), the trustee had 60 days from the date of the petition in which to redeem the auto. Full redemption must have occurred within this period, as redemption payment cannot be spread out over the life of a plan. *See id.* at 1442–43. It appearing that no such redemption occurred within this period, however, the ownership of the automobile passed to Cash America and the car was forfeited as property of the estate. *Cf. In re Jackson,* 133 B.R. at 546–47.

■ The pawned goods for which the statutory period had run cannot be demanded turned over to the estate under the authority of 11 U.S.C. § 542. Nor could the Dunlap automobile, for it was not redeemed within the allowed period. Only property that the trustee may use, lease, or sell is subject to this turnover provision, and only property in which the estate has an interest may be so used. *See* 11 U.S.C. §§ 363, 542. Neither the Mitchell or Dunlap estate retained an interest in the pawned goods. Cash America should be left to do as it wished with all of the property in question.

### III

The property rights of the debtors cease when the statutory period ends, not when the pawned goods are sold. To conclude otherwise impermissibly enlarges the rights of debtor to the detriment of the creditor and invalidates state property rights law. The decision of the bankruptcy court shall therefore be vacated in an accompanying Order, and the case should be remanded for proceedings in accordance with this opinion.