## In re RELATED PARTNERS PROPERTIES, INC., Debtor.

## RELATED PARTNERS PROPERTIES, INC., Appellant,

v.

## PNC CORNERSTONE, INC. and PNC Sutton Place, Inc., Successors to Provident National Bank, Appellees.

No. 93–8621–CIV.

Bankruptcy No. 92–32274–BKC–RAM.

United States District Court, S.D. Florida.

Dec. 2, 1993.

Samuel J. Zusmann, Jr., Michael G. Williamson and Thomas B. Smith, Maguire, Voorhis & Wells, P.A., Orlando, FL, Richard P. Schifter and Marshall E. Tracht, Arnold & Porter, Washington, DC, R. Thomas Farrar, Holland & Knight, Miami, FL, for appellees.

Charles I. Cohen and Leslie Scott Osborne, Furr and Cohen, P.A., Boca Raton, FL, for appellant/debtor.

### ORDER DENYING APPELLANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL

ARONOVITZ, District Judge.

THIS CAUSE came before the court upon Appellant, Related Partners Properties, Inc.'s Emergency Motion for Stay Pending Appeal file dated November 22, 1993. Oral Argument was heard in this matter on Tuesday, November 30, 1993. The Court has considered the Motion, Memoranda in Support and in Opposition, Oral Argument of counsel, the entire record, and the applicable law, and is otherwise fully advised in the premises. For the following reasons, Appellant's Emergency Motion for Stay Pending Appeal is considered moot and is **DENIED.**

On July 2, 1992, Appellant/Debtor, Related Partners Properties, Inc. ("Related") filed for Chapter 11. The Bankruptcy Court lifted the automatic stay to allow secured creditor, Provident National Bank, ("Provident") to proceed with its foreclosure action by Order file dated September 8, 1992. Related filed a Chapter 11 Plan of Reorganization and an accompanying Disclosure Statement on May 28, 1993. On July 12, 1993, Related filed an emergency Motion seeking to reimpose the automatic stay of the foreclosure action. The Bankruptcy Court denied that Motion for stay on July 30, 1993.

At a hearing on July 20, 1993, the Bankruptcy Court denied approval of Related's First Disclosure Statement and granted Related thirty (30) days to amend. (Transcript at 31–35) Related filed its First Amended Disclosure Statement on August 19, 1993, and at a hearing commenced on September 7, 1993 and continued on September 13, 1993, the Bankruptcy Court held that the Plan could not be confirmed unless the defaults under the Reimbursement Agreements were cured. (September 13, 1993, Transcript at 68–73)

On or about August 19, 1993, the State Court entered a Judgment of Foreclosure in favor of Provident and against Related. On August 30, 1993, Related filed a second Motion to enjoin Provident from proceeding with foreclosure sale. The Bankruptcy Court by Order file dated September 14, 1993 denied this Motion.[1]

Provident proceeded to foreclose the judgment sale on the subject properties and the sale was conducted on September 15, 1993. On November 2, 1993, Related filed an Amended Chapter 11 Plan of Reorganization and Second Amended Disclosure Statement. It should be noted that no Plan had been confirmed as of the time this Court heard oral arguments on the present Emergency Motion.

Related filed a fifth Motion for Relief from Stay on November 11, 1993 in that Certificates of Title on the subject properties had not yet been issued. On November 17, 1993, Judge Mark held a telephonic hearing and thereupon issued an Order that same day Granting in Part Debtor Related's Motion to Reimpose the Stay **subject to specific conditions set forth in the Order.** In particular, Judge Mark held that PNC–Cornerstone, Inc. and PNC–Sutton Place, Inc. ("PNC", successors to Provident) are enjoined from accepting from the Clerk of the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida, a Certificate of Title to the Cornerstone Apartments and/or Sutton Place Apartments ("Properties") prior to 2:00 p.m. on November 22, 1993.

Judge Mark further ordered that said injunction shall continue through December 3, 1993, **if, and only if, specific conditions were met.**[2] Counsel for Appellant/Debtor admitted at Oral Argument that the conditions necessary for continuance of the injunction through December 3, 1993, had not been met and the record supports this critical fact. On November 24, 1993, the Ninth Circuit Court directed the Clerk to issue the two

---

1. Related filed a third Motion for Relief from Stay and a fourth Motion (Emergency) for Relief from Stay on September 24, 1993 and September 27, 1993, respectively. By Endorsement Order file dated September 27, 1993, the Bankruptcy Court denied those two Motions.

2. Those conditions specified in Judge Mark's November 17, 1993, Order were that the injunction would continue through December 3, 1993, if, and only if, (i) on or before 2:00 p.m. on November 22, 1993, the Debtor has telecopied to counsel to PNC and filed with this Court a copy of an executed contract for the sale of the Properties, which contract provides (a) for the purchaser to place One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00) in escrow satisfactory to PNC no later than the close of business on November 24, 1993, (b) that the contract is unconditional and that if the Buyer shall default on the contract (provided that the inability of the Buyer to obtain approval of the sale from the bond trustees or issuing authorities or the inability to confirm a plan of reorganization approving the contract shall not be deemed a default by the Buyer), One Million Dollars ($1,000,000.00) of the deposit shall be forfeited to the Debtor, and (c) the plan of reorganization approving the contract will provide for the cure of all defaults on obligations owed to PNC and shall render PNC unimpaired; and (iii) that the deposit of $1,850,000.00 is placed in escrow in readily available funds and evidence thereof is telecopied to counsel for the Debtor and for PNC, no later than the close of business on November 24, 1993.

Certificates of Title and they were issued.[3]

Appellant/Debtor, Related filed the Emergency Motion for Stay Pending Appeal in this Court on November 22, 1993. In that Counsel for the Appellant/Debtor admitted at Oral Argument that the conditions required for extending the injunction through December 3, 1993 had not been met as required by Judge Mark in his November 17, 1993 Order, (the record also supports this critical fact) the injunction thereby expired at 2:00 p.m. on November 22, 1993. Thereafter, PNC was free to request the Judge in the State Court Action to Order the Clerk to issue the Certificates of Title since the injunction was no longer in effect. That Order was obtained on November 24, 1993 and the Certificates were properly issued. Accordingly, this Court finds that the relief sought by Appellant/Debtor in its Emergency Motion for Stay Pending Appeal cannot be granted as it is too late and the issue presented is moot based on the aforementioned circumstances of this case and the following case law.

█ In reviewing applicable case law, this Court follows *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), which has been followed in this District. *In re Glenn* involved a consolidation of appeals of three separate actions by Chapter 13 debtors who raised similar questions about the point in the foreclosure process at which a Chapter 13 debtor loses the right to cure a default on a real estate mortgage on his principal residence. The Court in *In re Glenn* stated:

> In summary, we hold that under 11 U.S.C. § 1322(b) a Chapter 13 debtor may cure a default on a mortgage on his principal residence even when the debt has been accelerated and a judgment of foreclosure has been entered *provided that no fore-closure sale has taken place. Once the property has been sold, the right to cure the default and reinstate the terms of the mortgage under section 1322(b) ceases. (Emphasis added) Id.* at 1442.

The date of foreclosure sale is defined in *In re Campbell,* 82 B.R. 614 (Bankr.S.D.Fla. 1988), which relied upon *In re Glenn.* The Court in *In re Campbell* stated:

> The term "sale" ordinarily denotes the auction event, not the ultimate judicial approval of the sale or the subsequent formal passage of title. The Florida statute recognizes this distinction by providing a certificate of sale immediately following the auction, and a certificate of title after all objections are finally resolved and the right of redemption has expired. *Id.* at 615.

*In re Campbell* further held that the debtor's right of redemption will not expire unless objections to the sale are finally overruled and a certificate of title is issued. Similarly, Appellant Related's right of redemption expired upon issuance of the Certificates of Title by the Clerk, after the State Court overruled Related's objections to Foreclosure sale and ordered the Clerk to issue the Certificates of Title. *See also, Valente v. Savings Bank of Rockville,* 34 B.R. 362, 365–66 (D.C.Conn.1983) (debtors, under Connecticut law, can exercise the curative provisions of Chapter 11 after a final state court judgment but *not* after a sale takes place and is confirmed/ratified by the court); *In re Telson,* 121 B.R. 662, 664 (Bkrtcy.S.D.Fla.1990) (once the property has been sold in a valid state court foreclosure sale, the right to cure the default in Chapter 13 by deaccelerating and reinstating the mortgage ceases).

█ This court further recognizes Judge Marcus' very enlightened Order file dated August 31, 1993, which addressed the issue of whether, where the purchaser at a foreclosure sale is the mortgagee and not a third party, can the debtor still exercise a § 1322(b) right to cure the default and reinstate the mortgage when the petition is filed *after* foreclosure sale, but *before* the Clerk of Court issues the certificate of title (thereby transferring legal title). *In re Outten,* Case No. 91–1047–Civ–Marcus. Obviously, this

---

**3.** This Court was made aware at Oral Argument that the Ninth Circuit Court held a hearing on November 17, 1993, on Related and Alexander Abbate's objections to the foreclosure sale of the Cornerstone Apartments, which sale was held on September 15, 1993. The Ninth Circuit Court overruled these objections and confirmed the foreclosure sale by Order dated November 22, 1993.

did not exist in the case at bar. The Certificates of Title were properly issued by the Clerk in this case pursuant to a State Court Order entered (1) after the injunction expired at 2:00 p.m. on November 22, 1993, due to the Appellant/Debtor's failure to comply with the conditions of Judge Mark's Order, and (2) after Appellant's objections to Foreclosure sale were overruled.[4]

*In re Outten,* supports a finding of mootness in this case in that the Clerk in this case already properly issued Certificates of Title and Judge Marcus noted that the expiration of the Florida redemption period is accomplished only when the Clerk files a certificate of title and serves a copy of it on each party not in default. *In re Outten* at pg. 12, *citing,* Fla.Stat. § 45.031(4); *Allstate Mortgage Corporation of Florida v. Strasser,* 286 So.2d 201 (Fla.1973).

Since the injunction in this case expired at 2:00 p.m. on November 22, 1993, when Appellant/Debtor did not comply with the conditions set forth in Judge Mark's Order of November 17, 1993, no injunction was in effect at the time the State Court directed the Clerk to issue the Certificates of Title nor was there an injunction in effect at the time the Certificates were in fact issued.

Based upon these circumstances and upon the aforementioned case law, Related's right of redemption expired when the Certificates of Title to the subject properties were properly issued by the Clerk, at which time Related's right to cure the defaults ceased. As such, Related's Emergency Motion for Stay Pending Appeal is considered moot and is **DENIED.**

DONE AND ORDERED.

---

4. This Court recognizes the fact that the cases cited in this Opinion, namely, *In re Glenn, In re Campbell, In re Telson* and *In re Outten,* involved Chapter 13 Debtor's rights. This Court, however, agrees with the holding in *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982), that the plain language authorizing cure in Chapter 11 [§ 1123(a)(5)(G)] is "similar to" that of Chapter 13 and the concept of cure "means the same thing" in both Chapters. *Id.,* at 29. Accordingly, because of the lack of Chapter 11 cases on point, this Court finds supportive those Chapter 13 cases cited herein. *See also, Valente v. Savings Bank of Rockville,* 34 B.R. 362, 366 (D.C.Conn.1983).