**In re Lugean BROOKS, Debtor.**

**No. 04 B 39514.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 30, 2005.

Dean Paolucci, Chicago, IL, for Movant/Debtor.

Frank R. Martin, Chicago, IL, for Respondent.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

This Chapter 13 case presents the question of how the Seventh Circuit's decision in *Colon v. Option One Mortgage Corporation*, 319 F.3d 912 (7th Cir.2003), applies beyond the typical "judicial foreclosure" procedure, i.e., a judicial sale and subsequent confirmation. At issue is whether a debtor has an interest in property which can be protected in bankruptcy after entry of a "consent foreclosure" judgment in a

foreclosure case involving an installment land contract, or a contract for deed. The undersigned holds that an Illinois "consent foreclosure" judgment vesting title to real estate in the creditor/mortgagee prior to a bankruptcy filing is the operative event that terminates a Chapter 13 debtor's right to cure a mortgage default under 11 U.S.C. § 1322(c)(1); it is the functional equivalent of a foreclosure sale.

## Background

On December 24, 1996, debtor Lugean Brooks entered into an installment land contract (also known as a contract for deed) for the purchase of a dwelling at 19035 South Crawford Avenue, Flossmoor, Illinois. The sellers retained title, agreeing to transfer it to Brooks upon completion of all contract payments. After Brooks defaulted on monthly payments in 2002, the contract sellers and official title holders, Evelyn Aronson and Marlene Jaffe, filed suit to dispossess him of the premises under the Illinois Mortgage Foreclosure Law ("IMFL"), 735 Ill. Comp. Stat. 5/15–1101 *et seq.* (2002), on December 18, 2002 (Case 02 CH 22693). On February 23, 2004, the contract buyer and sellers entered an agreement permitting the Circuit Court of Cook County, Illinois, to enter a "Consent Judgment of Foreclosure" pursuant to 5/15–1402(a) of IMFL. The state court judge added to this agreed judgment a 90–day redemption period expiring on May 24, 2004. Three days prior to the expiration date, on May 21, 2004, Brooks filed the first of two Chapter 13 cases; the Court subsequently dismissed

the first bankruptcy case on October 20, 2004. Undeterred, Brooks filed this second Chapter 13 case five days later on October 25, 2004.

Aronson and Jaffe object to the confirmation of Brooks' proposed Chapter 13 plan because it attempts to cure a contractual default of $72,444 on the installment purchase of the real property in which Brooks allegedly has no further property interest other than bare possession. On January 10, 2005, this Court sustained the objection and denied confirmation of the plan. Brooks's attorney was not present in the undersigned's courtroom at the time of this order due to his presence in another courtroom to handle motions set for the same time. Brooks' attorney then filed the document at issue in this opinion: a motion to vacate the order denying confirmation and a combined motion to confirm his Chapter 13 plan over the objection of Aronson and Jaffe.

## Discussion and Analysis

As Brooks' attorney filed this motion within 10 days of the entry of the aforementioned order and alleged error, the Court will construe it as a "Motion to Alter or Amend Judgment" within the purview of Bankruptcy Rule 9023 and, by incorporation, Federal Rule of Civil Procedure 59(e).[1] The grounds for granting a Rule 59 motion for reconsideration and amendment of a judgment are similar to those required for amending factual and legal findings under Rule 52(b) (and Bankruptcy Rule 7052). Those grounds include (1) an intervening change in the law, (2)

---

1. Any motion that draws into question the correctness of the judgment is functionally a motion under Rule 9023, whatever its label. Thus a motion to "reconsider," "for clarification," to "vacate," to "set aside" or to "reargue" is a motion under Rule 9023, and under Bankruptcy Rule 8002(b) will postpone the time for appeal if the motion was timely made.

It has also been held that a motion for reconsideration is to be treated as a motion under Rule 9023, rather than, for example, a motion under Rule 9024 ..., since it draws into issue the correctness of the trial court's decision.
10 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 9023.04, at 9023–6 (15th ed. rev. 2004).

newly discovered evidence that in all fairness could not have been presented or could not have been anticipated as being relevant at the time of trial, (3) any manifest error of fact or law, and (4) lack of notice. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir.1998); *Matter of Prince*, 85 F.3d 314, 324–25 (7th Cir.1996); *Publishers Resource, Inc. v. Walker–Davis Publications*, 762 F.2d 557, 561 (7th Cir. 1985); *Spirk v. Sullivan*, 2003 WL 22048077, at \*7 (N.D.Ill.2003); *In re Brogden*, 274 B.R. 287, 293–94 (Bankr. M.D.Tenn.2001); *cf. Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986) (same for Rule 52(b) motion to amend factual findings). If the ground asserted is that the judgment was based on a manifest error of fact or law, the alleged error must relate to evidence and legal arguments that were already part of the trial record and pleadings leading to the disputed judgment. *See Prince*, 85 F.3d at 324; *Fontenot*, 791 F.2d at 1219–20. The movant cannot present new legal theories (other than ones based on an intervening change of law) or new evidence (other than evidence that could not have been discovered in time for trial). *See Walker–Davis*, 762 F.2d at 559, 561; *Fontenot*, 791 F.2d at 1219–20; *Spirk*, 2003 WL 22048077, at \*7.

Brooks argues that the Court committed legal error by sustaining the land contract sellers' objection to confirmation in spite of the fact that under Illinois law such a contract is treated as a mortgage, and under the literal language of § 1322(c)(1),[2] Brooks should have been able to effect a Chapter 13 cure because no foreclosure sale of his primary residence had occurred. The parties do not dispute what the law requires regarding the treatment for a breach of certain kinds of contracts for deed; they agree that it must be and was treated as a mortgage foreclosure action in this instance due to title 735, section 5/15–1106(a)(2) of the Illinois Compiled Statutes, which requires foreclosure when the term of the contract is more than five years and the buyer has already paid more than 20% of the purchase price. Rather, they disagree about the effect of the "consent foreclosure" procedure in 5/15–1402 of IMFL on a Chapter 13 debtor's right to cure under § 1322(b)(5) and (c)(1) of the Bankruptcy Code.

The Illinois Mortgage Foreclosure Law sets forth four types of foreclosure proceedings: "Deed in Lieu of Foreclosure," 5/15–1401; "Consent Foreclosure," 1402; "Common Law Strict Foreclosure," 1403; and "Judicial Foreclosure," 1404. Although "Judicial Foreclosure" is by far the most common and familiar type, this case involves a "Consent Foreclosure," which can be pursued both when a junior lien

---

**2.** (b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

. . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . .

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

11 U.S.C. § 1322(b)(2)-(c)(1).

holder objects, *see* 1402(b), and when no junior holder objects or exists, *see* 1402(a), as in Brooks' foreclosure case. When no party to the foreclosure case objects,[3] the following three elements must be met to obtain a "consent foreclosure" judgment: 1) the mortgagor/debtor expressly agrees to the consent foreclosure in lieu of judicial foreclosure; 2) the mortgagee waives all rights to a deficiency judgment; and 3) the bargain occurs before the foreclosure sale actually takes place (but not necessarily before entry of a judgment of foreclosure). *See* 5/15–1402(a).[4] If and when these conditions occur, the judge vests "absolute title" in the mortgagee in satisfaction of the mortgage indebtedness. The mortgagee then holds the foreclosed property free of the debtor's state-law reinstatement and redemption rights (and most other claims, liens, and interests). *See* 5/15–1402(a); *see also* Feb. 23, 2004, Consent Judgment of Foreclosure ¶ 4.

In *Colon,* the Seventh Circuit determined the issue of whether a Chapter 13 debtor can cure a default on a principal-residence mortgage, when such debtor's principal residence has been sold at an Illinois foreclosure sale prior to the bankruptcy filing but has not been confirmed in a state court sale-confirmation hearing. *See Colon v. Option One Mortg. Corp.,* 319 F.3d 912, 915 (7th Cir.2003). To determine the cut-off date for using the Chapter 13 procedure to cure, the *Colon* court had to choose between the actual date of the sale transaction and the date of the sale-confirmation hearing in order to determine when "a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" has occurred. 11 U.S.C. § 1322(c)(1); *see Colon,* 319 F.3d at 915–16. To resolve the ambiguity in that phrase, the Seventh Circuit noted that Congress gave states the ultimate authority to determine the cut-off date under § 1322(c)(1) through legislation setting forth sale regulations as well as the scope of the redemption right. *See Colon,* 319 F.3d at 917–21. *But see Taylor v. Vt. Hous. Fin. Agency (In re Taylor),* 286 B.R. 275, 282 (D.Vt.2002) (positing that § 1322(c)(1) should not turn on variations in states' foreclosure procedures). Furthermore, a Chapter 13 debtor's right to cure a mortgage default under § 1322(b)(5) and (c)(1) is coextensive with (but not greater than) such debtor's right

---

**3.** *See* Feb. 23, 2004, Consent Judgment of Foreclosure ¶ 6.

**4.** "Consent Foreclosure. (a) No Objection. In a foreclosure, the court shall enter a judgment satisfying the mortgage indebtedness by vesting absolute title to the mortgaged real estate in the mortgagee free and clear of all claims, liens (except liens of the United States of America which cannot be foreclosed without judicial sale) and interest of the mortgagor, including all rights of reinstatement and redemption, and of all rights of all other persons made parties in the foreclosure whose interests are subordinate to that of the mortgagee and all nonrecord claimants given notice in accordance with paragraph (2) of subsection (c) of Section 15–1502 if at any time before sale:
(1) the mortgagee offers, in connection with such a judgment, to waive any and all rights to a personal judgment for deficiency against the mortgagor and against all other persons liable for the indebtedness or other obligations secured by the mortgage;
(2) such offer is made either in the foreclosure complaint or by motion upon notice to all parties not in default;
(3) all mortgagors who then have an interest in the mortgaged real estate, by answer to the complaint, response to the motion or stipulation filed with the court expressly consent to the entry of such judgment;
(4) no other party, by answer or by response to the motion or stipulation, within the time allowed for such answer or response, objects to the entry of such judgment; and
(5) upon notice to all parties who have not previously been found in default for failure to appear, answer or otherwise plead."
735 Ill. Comp. Stat. 5/15–1402 (2002).

to avoid a past foreclosure sale under IMFL by causing an Illinois court to deny confirmation of, and thus nullify, the sale. *See Colon,* 319 F.3d at 919–21. To explore the "outer limits" of § 1322(c)(1) as fixed by Illinois law, the *Colon* court additionally reviewed a debtor's equitable and statutory redemption rights under IMFL but concluded that redemption rights are set to expire prior to any given foreclosure sale, *see id.* at 919–20; *see also* 5/15–1507(b); *In re Josephs,* 93 B.R. 151, 152–53 (N.D.Ill. 1988), thereby affording Chapter 13 debtors in Illinois no extended right to cure past the foreclosure sale described in § 1322(c)(1). Finally, it concluded that the Chapter 13 debtor's right to cure under § 1322(c)(1) should not be any greater than it would have been had the sale-confirmation procedure occurred prior to the bankruptcy filing, a procedure providing four limited grounds for voiding a foreclosure sale. *See Colon,* 319 F.3d at 920–21. To accomplish this parity, the *Colon* court approved the bankruptcy judge's lifting the automatic stay for the purpose of allowing the sale-confirmation hearing to proceed; if the Illinois court confirms the sale, the home-mortgage default cannot be cured, but if it voids the sale, the Chapter 13 debtor can proceed using § 1322(c)(1) to cure the default because denial of confirmation will void the sale. *See id.* at 921; *In re Campbell,* 82 B.R. 614, 615–16 & n. 4 (Bankr.S.D.Fla.1988) (same); *cf. In re Hric,* 208 B.R. 21, 25–26 (Bankr.D.N.J. 1997) (concluding that a mortgage default is not subject to cure after the auction proceeding but not addressing whether the state court should first be allowed to determine that the auction was invalid or unenforceable); *In re Simmons,* 202 B.R. 198, 203–04 (Bankr.D.N.J.1996) (same). *Contra In re Downing,* 212 B.R. 459, 464, 467 (Bankr.D.N.J.1997) (concluding that a mortgage default is always subject to a § 1322 cure following a New Jersey fore-closure auction as long as the sheriff's deed has not been delivered); *Matter of Ross,* 191 B.R. 615, 621 (Bankr.D.N.J.1996) (same).

■ How does the *Colon* framework apply here where the debtor and the mortgagee have engaged in a "consent foreclosure," which does not implicate a subsequent judicial sale, rather than a "judicial foreclosure," which does involve a subsequent judicial sale, *see* 5/15–1404? The sale-confirmation hearings at issue in *Colon* are not implicated in "consent foreclosure" cases. Nevertheless, the *Colon* framework can be analogized in two ways. First, the "vesting absolute title to the mortgaged real estate in the mortgagee free and clear of ... [the] interest of the mortgagor" is a legal event similar to a sale in terms of a transfer extinguishing a debt; it is therefore a logical end date for calculating the time limitation in § 1322(c)(1) of the Code. 5/15–1402(a); *see also In re Josephs,* 93 B.R. 151, 155 (N.D.Ill.1988) (noting how a mortgage does not exist under IMFL after title passes to the mortgagee, making a cure thereof impossible); *In re Pellegrino,* 284 B.R. 326, 331 (Bankr.D.Conn.2002) (concluding "that Section 1322(c)(1) permits the Debtor to cure his payment default under the Mortgage until the foreclosure process vests unified legal and equitable title to the Residence"); *cf. In re Carr,* 52 B.R. 250, 261–62 (Bankr.E.D.Mich. 1985) (noting ability to use Chapter 13 where "a judgment of strict foreclosure does *not* work a change of ownership"). *But cf. In re Taylor,* 286 B.R. 275, 280–82 (D.Vt.2002) (concluding that a pre-sale cure under § 1322(b)-(c) can be accomplished, even after a judgment of "strict foreclosure" whereby "full legal and equitable title" vests in the mortgagee, simply because of a lingering "contingent equitable interest" such as a redemption right).

Second, as in *Colon*, a debtor's lack of redemption rights on the bankruptcy-petition date should similarly be used to reign in the "outer limits" of foreclosure proceedings under IMFL. *Cf. In re Brown*, 249 B.R. 193, 194 (Bankr.N.D.Ill.2000); *Carr*, 52 B.R. at 252–57.

No redemption rights should have existed in favor of Brooks when he filed the first of his two Chapter 13 cases. IMFL clearly indicates that no redemption rights exist after the title-transfer judgment issued in a "consent foreclosure" case. IMFL provides in relevant part:

(a) Owner of Redemption.

Except as provided in subsection (b) of Section 15–1402,[5] only an owner of redemption may redeem from the foreclosure, and such owner of redemption may redeem *only during the redemption period specified in subsection (b) of Section 15–1603* and *only if the right of redemption has not been validly waived.*

(b) Redemption Period.

(1) In the foreclosure of a mortgage of real estate which is residential real estate at the time the foreclosure is commenced, the redemption period shall end on the later of (i) the date 7 months from the date the mortgagor or, if more than one, all the mortgagors (A) have been served with summons or by publication or (B) have otherwise submitted to the jurisdiction of the court, or (ii) the date 3 months from the date of entry of a judgment of foreclosure.

. . .

(c) Extension of Redemption Period.

(1) Once expired, the right of redemption provided for in Sections 15–1603 or 15–1604 *shall not be revived.* The period within which the right of redemption provided for in Sections 15–1603 or 15–1604 may be exercised runs independently of any action by any person to enforce the judgment of foreclosure or effect a sale pursuant thereto. *Neither the initiation of any legal proceeding nor the order of any court staying the enforcement of a judgment of foreclosure or the sale pursuant to a judgment or the confirmation of the sale, shall have the effect of tolling the running of the redemption period.*

735 Ill. Comp. Stat. 5/15–1603 (emphases added). The statute makes clear that the statutory redemption period is a fixed time frame, and once it expires, it cannot be "revived." Even if this statutory period has not expired when a final judgment in a "consent foreclosure" is issued, such judgment essentially cuts it off, because the debtor/mortgagor expressly consents to entry of the judgment, and IMFL specifically provides that the title vested in the mortgagee is free and clear of the "interest of the mortgagor, including all rights of . . . redemption." 5/15–1402(a); *cf.* 5/15–1507(b) (statutory redemption period must expire prior to sale in "judicial foreclosure" cases, thereby leaving bidders at such sales free of that lingering cloud); *In re Josephs*, 93 B.R. 151, 152–53 (N.D.Ill.1988) (same). On the other hand, if the time frame for statutory redemption has in fact expired prior to a "consent foreclosure" judgment or a foreclosure sale, an equitable right of redemption may still exist.[6]

---

5. IMFL refers here to an exception contained in the "consent foreclosure" provision, but that exception has no effect on this case. It refers to the situation in which a subordinate mortgagee objects to the consent foreclosure but agrees to pay the redemption amount in place of the debtor, in which case the court will award the objecting subordinate mortgagee the absolute title to the real estate. *See* 5/15–1402(b)(3).

6. Analysis of Illinois' equitable right of redemption is necessary here because the parties have not provided the bankruptcy court

*See Colon,* 919–20 & n. 7. Even then, however, the statute prohibits any further "equitable right of redemption . . . after entry of a judgment of foreclosure pursuant to Sections 15–1402." 5/15–1605. The "outer limits of the right to redeem" under Illinois law described in *Colon,* 319 F.3d at 918, should have ended when the state court entered the "Consent Judgment of Foreclosure," and this outer limit also circumscribed the Chapter 13 debtor's right to cure under § 1322(c)(1) of the Bankruptcy Code, *see id.* at 918, 921.

Brooks argues that the Illinois Forcible Entry and Detainer Act ("FEDA"), 735 Ill. Comp. Stat. 5/9–101 *et seq.* (2002), creates an additional redemption right in those eviction cases for which the state court must issue a judgment for possession against an installment-land-contract purchaser. He relies on 5/9–110 of FEDA, which provides that upon entry of the judgment for possession, the court "may stay the enforcement of the judgment for a period not to exceed 60 days from the date of the judgment"; if the debtor timely produces the entire decelerated balance due (i.e., cures the prior defaults) plus costs and attorneys' fees and cures any other nonmonetary defaults, the judgment for possession will be vacated upon such cure. Some authorities have compared this FEDA relief to a redemption period-one that gives a Chapter 13 debtor in Illinois enough of a property right to permit the curing of a default under § 1322(b) of the Code. *See In re Brown,* 249 B.R. 193, 198 (Bankr.N.D.Ill.2000); *cf. In re Carr,* 52 B.R. 250, 252–57, 262 (Bankr. E.D.Mich.1985) (similar conclusion under Michigan law).

The defect in Brooks' contention, though, is that 5/9–110 of FEDA was never applicable during any of the state court activity that preceded his Chapter 13 cases. The parties are in substantial agreement that IMFL (the Illinois Mortgage Foreclosure Law) applied to the facts of the prior state court suit by virtue of the following provision:

(a) Exclusive Procedure. From and after the effective date of this amendatory Act of 1986, the following shall be foreclosed in a foreclosure pursuant to this Article:

. . .

(2) any real estate installment contract for residential real estate entered into on or after the effective date of this amendatory Act of 1986 and under which (i) the purchase price is to be paid in installments over a period in excess of five years and (ii) the amount unpaid under the terms of the contract at the time of the filing of the foreclosure complaint, including principal and due and unpaid interest, at the rate prior to default, is less than 80% of the original purchase price of the real estate as stated in the contract;

735 Ill. Comp. Stat. 5/15–1106(a) (2002). Both the above designation "Exclusive Procedure" as well as a matching, dovetail exclusion in the general provisions of FEDA, *see* 5/9–102(a)(5), imply that the 60–day stay against possession enforcement in 5/9–110 of FEDA would not create additional protection for an installment contract purchaser like Brooks. If any doubt concerning 5/9–110's applicability still exists, however, it is eliminated by the IMFL section providing that "[s]ection 9–110 of the Code of Civil Procedure shall not be applicable to any real estate installment contract which is foreclosed under this Article [i.e., IMFL]." 735 Ill. Comp. Stat. 5/15–1106(e).

■ We can question the authority for the state court judge's order extending

---

with enough information to determine when exactly the statutory right of redemption un-

der 5/15–1603(b) of IMFL was set to expire in the state court proceeding.

Brooks' redemption rights to May 24, 2004, and consequently into his first Chapter 13 case. Because the parties have not briefed the issue of whether this state court order rendered the rest of the judgment void or merely voidable, this federal court of original jurisdiction will assume *arguendo* that it was a valid redemption period and continue to resolve the issues presented in the motion to vacate as if Brooks had property rights justifying use of the § 1322(b) cure provisions in his first case. Brooks filed the first Chapter 13 case three days before the expiration of the questionable redemption period, so some legal provision in the Bankruptcy Code would necessarily have had to toll or stay the running of the redemption period during the first case if he were to continue relying upon it in bankruptcy.

■ Both parties to this dispute appear to assume that the automatic stay of creditor activities found in 11 U.S.C. § 362(a), including judgment and lien enforcement against the debtor and his property, tolled the running of the redemption period in the foreclosure action. The law has been otherwise for quite some time. *See In re Tynan,* 773 F.2d 177, 179–80 (7th Cir. 1985); *In re Roach,* 824 F.2d 1370, 1372 n. 1 (3d Cir.1987) (legislatively overruled on other grounds); *In re Glenn,* 760 F.2d 1428, 1437–40, 1442 (6th Cir.1985); *Johnson v. First Nat'l Bank,* 719 F.2d 270, 276–78 (8th Cir.1983); *Dunlap v. Cash Am. Pawn (In re Dunlap),* 158 B.R. 724, 728 (M.D.Tenn.1993); *In re Josephs,* 93 B.R. 151, 153 n. 2 (N.D.Ill.1988). *Contra In re Carr,* 52 B.R. 250, 259–63 (Bankr. E.D.Mich.1985). The stay prohibits only the affirmative acts and words of people,

not events occurring by operation of law. *See Johnson,* 719 F.2d at 276–78. Assuming that the state court judge's redemption extension provision is valid, another provision of the Code may have afforded Brooks some relief. If, as here, any redemption period of a debtor would expire within the first 60 days of a bankruptcy case, § 108(b) of the Code extends the period for the *trustee* to accomplish such act of redemption until the 60th day following the filing date of a voluntary bankruptcy petition. *See Tynan,* 773 F.2d at 179; *Johnson,* 719 F.2d at 277–78; *In re Campbell,* 82 B.R. 614, 616 & n. 3 (Bankr. S.D.Fla.1988). This extended state-law property right is distinct from the right to cure defaults under § 1322(b). *See Matter of Ross,* 191 B.R. 615, 617–18 (Bankr. D.N.J.1996); *In re Dunlap,* 143 B.R. 859, 863 (Bankr.M.D.Tenn.1992), *vacated on other grounds,* 158 B.R. 724 (M.D.Tenn. 1993); *In re Coleman,* 82 B.R. 15, 16–18 (Bankr.D.N.J.1988); *Campbell,* 82 B.R. at 616. In Brooks' first Chapter 13 case, that extension expired (at the latest) during July 2004; Brooks had nothing but a bare possessory interest when he filed this second Chapter 13 case on October 25, 2004.

Section 108(b) of the Bankruptcy Code is often ignored as it is usually not critical in the context of the first bankruptcy case in which a Chapter 13 debtor attempts to save his home. This is true because if the cure rights set forth in § 1322(b)(2)-(5) are available, the debtor is using those provisions to accomplish his goal, thereby rendering separate usage of the § 108(b) time extension for redemption unnecessary.[7] *See, e.g., In re Taylor,* 286 B.R. 275, 279–80, 283 (D.Vt.2002) (§ 1322(b)-(c) creates a cure opportunity independent of redemp-

---

**7.** In any event, the alternative use of § 108(b) to accomplish a redemption through a deadline extension is disadvantageous compared to cure under § 1322(b). Unlike a § 1322 cure, it would require a *lump-sum* payment of

all principal and interest then due (either accelerated or decelerated, depending upon the source of the redemption right), because by definition a redemption is a full payment of the balance due. *E.g.,* 735 Ill. Comp. Stat.

tion under § 108(b)); *In re Pellegrino,* 284 B.R. 326, 330 (Bankr.D.Conn.2002); *In re Downing,* 212 B.R. 459, 463 (Bankr.D.N.J. 1997); *In re Carr,* 52 B.R. 250, 259 (Bankr. E.D.Mich.1985). Chapter 13 debtors often engage in serial filing practices when earlier cases fail, even though their existing property rights during the later cases are not always the same as in earlier cases. *See, e.g., In re Bates,* 270 B.R. 455, 469–71 (Bankr.N.D.Ill.2001) (redemption period for property taxes expired prior to third

Chapter 13 case, eliminating possibility of treating tax claim in third plan). Section 108(b) then becomes important in determining exactly when redemption rights under IMFL may have expired and whether the "outer limits" of IMFL as described in *Colon* permit treatment of the residential real property in a Chapter 13 plan.[8]

Brooks' argument based on the literal statutory language permitting a cure "until such residence is sold at a foreclosure sale

---

5/9–104.1, 5/9–110 (decelerated balance due plus costs and attorneys' fees); 5/15–1603(d) (*all* principal and interest then due plus costs, attorneys' fees, property-tax advances, and senior mortgage payments made to preserve the property). *Cf. McCarn v. WyHy Fed. Credit Union (In re McCarn),* 218 B.R. 154, 162 (10th Cir. BAP 1998) (noting how under Wyoming law "[t]he right to redeem property ... does not allow the debtor to reverse acceleration on the loan and catch up payments, but rather requires the debtor to pay the purchaser of the property the sum that it paid at a foreclosure sale plus interest and costs"); *In re Taylor,* 286 B.R. 275, 282–83 (D.Vt.2002) (same); *In re Mangano,* 253 B.R. 339, 344 n. 1 (Bankr.D.N.J.2000) ("Under New Jersey law, redemption is effectuated by the payment in full of the mortgage indebtedness, plus costs of the foreclosure proceeding and costs of the sale."); *In re Little,* 201 B.R. 98, 102 (Bankr.D.N.J.1996) (same), *affirmed,* 159 F.3d 1352 (3rd Cir.1998); *In re Carr,* 52 B.R. 250, 252–53 (Bankr.E.D.Mich.1985) (redemption of Michigan land contract requires full payment of the decelerated balance due plus court costs). *See also In re Glenn,* 760 F.2d 1428, 1442–43 (6th Cir.1985) (rejecting "installment" redemption as a matter of Chapter 13 law); *In re Downing,* 212 B.R. 459, 460 n. 1 (Bankr.D.N.J.1997); *In re Campbell,* 82 B.R. 614, 616 (Bankr.S.D.Fla.1988).

**8.** The Court notes a difficult related issue that it need not definitively resolve here. If a debtor can no longer rely on the provisions in § 1322(b)(5) permitting the cure of mortgage arrears through a three-year Chapter 13 payment plan because a foreclosure sale (or, in some cases, a consent foreclosure judgment) has cut off that right under § 1322(c)(1), can he use a lingering, post-sale right of redemption under state law to assert a new right to

cure over a three-year plan, or must he actually accomplish redemption (i.e., payment in full, *see supra* note 7) by refinancing within 60 days of filing under § 108(b)? Some case law suggests that the latter alternative is correct. *See In re Tynan,* 773 F.2d 177, 179–80 (7th Cir.1985) (after determining that the Chapter 13 had been filed too late to utilize § 1322(b), the court further held: "[W]hen a petition in bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for 60 days from the commencement of bankruptcy proceedings.... [T]he only property interest which the Tynans had in the real estate after the foreclosure sale was the right of redemption.... The real property sold at the sheriff's sale did not become part of the estate."); *cf. Johnson v. First Nat'l Bank,* 719 F.2d 270, 276 (8th Cir.1983) (similar conclusion). Nevertheless, dicta in *Colon* could be used to argue that *any* lingering state-law rights that exist when a debtor files a Chapter 13 case permit use of the § 1322(b) right to cure defaults over an extended period of time, because the time limitation in § 1322(c)(1) is supposedly coextensive with the "outer limits" of Illinois law. *See Colon,* 319 F.3d at 918–21. The question presented in this footnote was not squarely presented in *Colon,* however, because that debtor's redemption rights had expired prior to the foreclosure sale and the bankruptcy filing.

The legal distinction between a redemption and a cure, in addition to the plain language of the § 1322(c)(1) "sale" deadline, suggests that a lingering redemption right existing *after a foreclosure sale* is not enough to trigger the extended and more favorable cure provisions of § 1322(b), though the debtor could still rely on his less advantageous § 108(b) right. *See In re Mangano,* 253 B.R. 339, 344–45 (Bankr.D.N.J.2000); *In re Hric,* 208 B.R.

that is conducted in accordance with applicable nonbankruptcy law" proves too much if taken to its logical ending point.[9] In a hypothetical "consent foreclosure" case culminating in a judgment under 5/15–1402 of IMFL, title may have vested in the mortgagee long ago without a sale, dispossessing the debtor from the residence for as long as five or six years beforehand. Yet, the debtor/mortgagor could come back after all that time and make the same argument in favor of allowing a Chapter 13 mortgage cure that Brooks makes here: no foreclosure "sale" has technically ever occurred in the state court action, so any right to cure my mortgage default is not limited by § 1322(c)(1). In other words, the debtor does not contemplate a logical ending point for the right to cure in Illinois "consent foreclosure" cases. According to the principles enunciated in *Colon*, that ending point could only be a "consent foreclosure" judgment entered under 5/15–1402 of IMFL.

### Conclusion

The Chapter 13 debtor has filed this bankruptcy case too late to accomplish a cure of his land installment contract under 11 U.S.C. § 1322(b) and (c). For the foregoing reasons, debtor Lugean Brooks' "Combined Motion to Vacate Order Denying Confirmation ... [and to] Overrule Objection to Confirmation" is denied.

This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052. A separate order consistent with the opinion will be entered in compliance with Bankruptcy Rule 9021. After further hearing on April 18, 2005, at 2:00 p.m., a separate order will address Brooks' "Combined Motion to ... Vacate Order of Dismissal."

21, 25–26 (Bankr.D.N.J.1997); *In re Simmons*, 202 B.R. 198, 205 (Bankr.D.N.J.1996); *In re Ziyambe*, 200 B.R. 790, 797, 799–800 (Bankr.D.N.J.1996); *In re Little*, 201 B.R. 98, 105, 108 (Bankr.D.N.J.1996); *Matter of Ross*, 191 B.R. 615, 617 (Bankr.D.N.J.1996) (rejecting notion that § 1322 cure rights "depend[ ] upon the status of the debtor's property rights, including debtor's right to redeem"); *In re Campbell*, 82 B.R. 614, 615–16 (Bankr. S.D.Fla.1988); *In re Heiserman*, 78 B.R. 899, 899 & 902–03 (Bankr.C.D.Ill.1987). *But see In re Taylor*, 286 B.R. 275, 279–82 (D.Vt. 2002) (lingering redemption right after a "strict foreclosure" judgment, which transfers title to the mortgagee without a sale, avoids the time limitation on the bankruptcy "cure" right in § 1322(c)(1)); *In re Coleman*, 82 B.R. 15, 16–18 (Bankr.D.N.J.1988) (even though debtor could no longer cure mortgage default pursuant to § 1322(b), she could rely on a lingering redemption right to the residence and spread such redemption payments over the course of the Chapter 13 plan).

9. Brooks places great weight on *In re Dorsett*, 2004 Bankr.LEXIS 1375 (Bankr.C.D.Ill. Sept. 15, 2004), for this proposition, largely because it is a precedent interpreting the time limitation in § 1322(c)(1) in the context of an Illinois real estate installment contract. However, *Dorsett* involved a more traditional "judicial foreclosure" proceeding under 5/15–1404 of IMFL, not a "consent foreclosure" under 5/15–1402. *See Dorsett*, 2004 Bankr.LEXIS 1375, at *2. The decision furthermore presented a straight application of the rule that a default on a home mortgage may be cured in a Chapter 13 until it has been sold at a foreclosure sale, not the question of what event in a "consent foreclosure" is legally equivalent to a foreclosure sale.